**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Jose Dominguez LIM, Jr.,
Defendant–Appellant.**

**No. 92–10078.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 18, 1992.

Decided Jan. 27, 1993.

Richard S. Kawana, Honolulu, HI, for defendant-appellant.

Michael K. Kawahara, Asst. U.S. Atty., Honolulu, HI, for plaintiff-appellee.

Before: HUG, PREGERSON, and WIGGINS, Circuit Judges.

PREGERSON, Circuit Judge:

Jose Dominguez Lim, Jr. ("Lim") appeals his conviction after a jury trial on one count of conspiracy to distribute and possess with intent to distribute ten or more grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and on one count of possession with intent to distribute ten or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. We affirm.

## BACKGROUND

Lim, wearing a yellow sweater, was arrested at the Honolulu Airport on a flight from Los Angeles. Lim had no drugs in his possession. But another passenger, Herman Martinez Apostol ("Apostol"), who carried a flight itinerary connecting him to Lim, was found in possession of drugs.

Undercover Honolulu police officers were assigned the task of observing arriving passengers. They noticed that Apostol, who walked off the plane before Lim, appeared to be looking around the airport as if he were seeking someone. They then saw Lim walk off the plane. Lim also appeared to be looking around for someone and to be watching Apostol and the undercover agents. The agents then stopped Apostol for questioning. Lim, however, proceeded to the baggage claim area, claimed a bag, and walked outside the terminal.

Undercover Agent Ohia followed Lim and asked to search his luggage. Lim consented to the search. Ohia found no drugs or other contraband in Lim's possession. Ohia returned to the baggage claim area. Lim hailed a cab.

In the meantime, at the baggage claim area, undercover Agent Nazarchyk conducted a consensual search of Apostol's luggage. Nazarchyk found methamphetamine in the pocket of Apostol's jacket and found a flight itinerary that referred to Lim. Nazarchyk questioned Apostol, who said that the drugs were not his but belonged to another passenger. Nazarchyk asked Apostol if the other passenger was wearing a yellow sweater. Apostol an-

swered affirmatively. Nazarchyk arrested Apostol and instructed Ohia to hurry outside and arrest Lim. This was done.

Lim and Apostol were both indicted for conspiracy to distribute and to possess with intent to distribute ten or more grams of methamphetamine and for knowingly and intentionally possessing with intent to distribute ten or more grams of methamphetamine.

Before trial, Lim moved to suppress evidence derived from his warrantless arrest for lack of probable cause. After a hearing, the court denied the motion. Lim then requested a continuance to obtain witnesses from California and the Philippines. The district court denied Lim's request. At trial, the district court granted the government's motion to correct a typographical error in the indictment because the government had incorrectly cited the statutory subsection that Lim allegedly violated.

Apostol pled guilty to one count of conspiracy. He testified as a witness for the government in its case against Lim. Apostol testified to out-of-court conversations he had with Lim and with a third individual, "Alex." The government alleged that Apostol, Lim, and Alex, an unindicted co-conspirator, were involved in a conspiracy to distribute and possess methamphetamine.

At Lim's jury trial, the government's expert witness, Agent Nazarchyk, testified regarding the drug courier "shotgun" profile. Nazarchyk testified that a "shotgun" is a member of a drug conspiracy who travels with a "mule," who carries the drugs. The "shotgun" carries no drugs but accompanies the "mule" to ensure that all goes according to plan.

Lim objected in limine to Nazarchyk's testimony regarding the drug courier shotgun profile. The district court overruled the objection, but stated that it would not allow Nazarchyk to express an opinion to the jury that Lim was a "shotgun" because he fit the profile. The district court also gave a limiting instruction to the jury.

Lim also objected in limine to Apostol's testimony regarding out-of-court statements allegedly made by Apostol, Alex,

and Lim. The court conditionally allowed Apostol to testify to the out-of-court statements subject to a motion to strike should the government fail to establish the evidentiary basis for their admissibility. Before the case went to the jury, the court unconditionally admitted Apostol's out-of-court statements when it denied Lim's subsequent motion to strike. The court found Lim's statements admissible as party-opponent admissions. The court also found that Apostol's testimony was sufficient to show that a conspiracy existed between Apostol and Alex and that Lim's and Apostol's actions at the airport showed they acted in concert. The district court, therefore, found that there was sufficient evidentiary basis to support the existence of a conspiracy.

At the end of the government's case, Lim moved for judgment of acquittal on the grounds that the government had failed to prove each and every element of the charges against Lim as to both the conspiracy and the possession counts. The district court denied the motion.

Lim appeals (1) the admission of the drug courier evidence, (2) the admission of Apostol's testimony as to the out-of-court statements, (3) the court's order allowing amendment of the indictment, (4) the court's denial of his motion for a continuance to obtain witnesses, (5) the court's denial of his motion to suppress evidence because Lim's warrantless arrest lacked probable cause, and (6) the court's denial of his motion for acquittal based on insufficiency of the evidence.

## DISCUSSION

### I. Drug Courier Profile Evidence

■ Lim challenges the admission of Agent Nazarchyk's testimony regarding the drug courier profile. We review the district court's admission of expert testimony on drug courier profiles for abuse of discretion. *United States v. Lui*, 941 F.2d 844, 846 (9th Cir.1991).

■ The admission of drug courier profile evidence is inherently prejudicial to the

defendant because the profile may suggest that innocuous events indicate criminal activity. *Id.* at 848. Our court has denounced the use of a drug courier profile as substantive evidence of a defendant's innocence or guilt. *Id.* at 847. In *Lui* we stated that, " '[e]very defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law enforcement official in investigating criminal activity.' " *Id.* (quoting *United States v. Beltran–Rios*, 878 F.2d 1208, 1210 (9th Cir.1989)).

Drug courier profile evidence, however, has been admitted in certain limited circumstances. In *Beltran–Rios*, this court held that while drug courier profiles have no place as substantive evidence of guilt at trial, they are, nonetheless, admissible as rebuttal testimony where the defendant has initially "opened the door" by emphasizing the fact that he did not fit the stereotype of a drug smuggler. 878 F.2d at 1211.

■ The government contends that because the defendant "opened the door" by testifying that he was innocent, the drug courier shotgun profile was admissible as rebuttal evidence. Nazarchyk's testimony regarding the profile, however, was introduced as part of the government's case-in-chief, before the defense introduced any evidence of the innocence of Lim's behavior. Thus, the profile evidence was not introduced "to rebut specific attempts by the defense to suggest innocence based on the particular characteristics described in the profile." *Id.* at 1213 n. 2. Therefore, the narrow *Beltran–Rios* exception does not apply.

■ Drug courier profile testimony may be admissible to establish modus operandi, but only in exceptional, complex cases. *United States v. Lui*, 941 F.2d at 848. *See, e.g. United States v. Johnson*, 735 F.2d 1200 (9th Cir.1984) (defendant was charged with securities fraud, mail fraud, and wire fraud for using two companies to defraud several investors). Here, there were merely two defendants traveling on the same plane allegedly involved in a conspiracy of three people to distribute methamphetamine. There is nothing complex about this conspiracy.

In *Lui* we indicated that the probative value of drug courier evidence must be weighed against the prejudice to the defendant so that "perfectly innocent items" are not turned into "evidence of guilt." *Lui*, 941 F.2d at 848. Here the profile was applied to two innocuous bits of evidence concerning Lim—the fact that he was engaging in domestic travel and was *not* carrying drugs. It seems clear that the prejudicial effect of applying the profile far outweighed its probative value and that the court abused its discretion in admitting such testimony.

■ We next consider whether this error was harmless. "The error is harmless if it is more probable than not that the prejudice resulting from the error did not materially affect the verdict." *Lui*, 941 F.2d at 848 (citing *United States v. Echavarria–Olarte*, 904 F.2d 1391, 1398 (9th Cir.1990)). In the instant case, there was more than sufficient evidence in the record to establish Lim's guilt. In fact, at oral argument Lim's counsel described the government's use of this evidence as "overkill." The error was harmless.

## II. Out-of-Court Statements

We review the district court's decision to admit evidence for abuse of discretion. *United States v. Torres*, 908 F.2d 1417, 1424 (9th Cir.), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 228 (1990). We review for clear error the district court's preliminary findings that there was a conspiracy, that the defendant was connected to the conspiracy, and that the out-of-court statements were made "during" and "in furtherance of" the conspiracy. *Id.*

Lim contends that the district court erred in allowing alleged co-conspirator Apostol to testify, over objection, to his own out-of-court statements and to statements allegedly made by Lim and by the unindicted co-conspirator Alex. Lim argues that because these statements are hearsay, they could only be admissible if they satisfy the requirements of Fed.R.Evid. 801(d)(2)(E) (co-

conspirator statements are non-hearsay). Lim further contends that the government has not introduced sufficient evidence of a conspiracy.

■ Much of Apostol's testimony was admissible on other than co-conspirator grounds. Lim objected to the admission of statements that Apostol said had been made to him by Lim. Specifically, Lim objected to Apostol's testimony that he overheard Lim speaking with Alex in Visayan and heard the letter "s" repeated; that Lim later told him that "s" meant "shabu" (methamphetamine); and that Lim told him he would accompany him on a trip to Chicago, which Apostol had agreed to take in order to transport shabu for Alex. These statements were all admissible under Fed.R.Evid. 801(d)(2)(A) as admissions by a party opponent.

■ Lim also objects to the admission of Apostol's testimony regarding conversations Apostol said he had with unindicted co-conspirator Alex. Specifically, Lim objects to Apostol's testimony that he asked Alex for a job; Alex asked him for a contact phone number; Alex asked Apostol to transport "shabu" to Chicago for him for which Alex would pay Apostol $500; Alex agreed to give Apostol a $300 advance; and Alex said that shabu cost $120 a gram. These statements are not hearsay; they are verbal acts admissible to show that a conspiratorial agreement existed between Alex and Apostol for the illegal transportation of drugs. *See* Fed.R.Evid. 801(c) advisory committee's note. *See also United States v. Wolfson*, 634 F.2d 1217, 1219 (9th Cir.1980) (witness testimony about what co-conspirators said is admissible to prove their verbal acts in saying it).

■ Lim also objects to Agent Nazarchyk's testimony regarding statements that Apostol made when Nazarchyk arrested him. When Nazarchyk found the drugs in Apostol's jacket pocket, Apostol uttered, "That's not mine. He gave it to me." When Nazarchyk asked Apostol if he was referring to the "guy who was wearing the yellow [sweater]," Apostol answered affirmatively. When Agent Ohia brought Lim to face Apostol and Nazarchyk, Lim said,

"I don't know this guy," to which Apostol asked, "Why you say you don't know me." The statements of Apostol immediately following his arrest were admissible as excited utterances under Fed.R.Evid. 803(2). Lim's own statement was admissible as a party-opponent admission under Fed. R.Evid. 801(d)(2)(A).

■ Finally, Lim objects to the admission of a statement that Apostol made to Nazarchyk before Apostol's arrest: "I'm traveling by myself, I am visiting friends, I am visiting my family here in Hawaii." This statement was admissible as non-hearsay under 801(d)(2)(E).

Under Fed.R.Evid. 801(d)(2)(E), a co-conspirator's out-of-court statement is admissible only if made "in the course of" and "in furtherance of" the conspiracy and if there is independent evidence of the existence of the conspiracy. *See United States v. Smith*, 893 F.2d 1573, 1578 (9th Cir.1990). Because Apostol's statement was made before his arrest, the statement may be considered to have been made "in the course of" the conspiracy. Because the statement was an attempt to conceal the conspiracy, it may also be considered to have been made "in furtherance of" the conspiracy.

■ Sufficient independent evidence supported the existence of a conspiracy and Lim's connection to it. This evidence includes: Apostol's testimony concerning statements made by Apostol, Lim and Alex; the flight itinerary revealing Lim's name carried by Apostol when he was arrested; and Nazarchyk's testimony regarding the behavior of Lim and Apostol at the airport. The court's finding that a preponderance of evidence supported the existence of the conspiracy and Lim's connection to it was not clearly erroneous, and the court did not abuse its discretion in admitting this statement as non-hearsay under Fed.R.Evid. 801(d)(2)(E).

## III. Amendment of the Indictment

The indictment charged in Count One that Lim, Apostol, and "Alex" (who was not indicted) had conspired to distribute and to possess with intent to distribute ten

or more grams of methamphetamine in violation of "Title 21, United States Code, Section 841(1)(1)."

Because there is no subsection (1), but only subsections (a) through (g), Lim moved to dismiss the indictment. The trial court denied the motion. The court granted the government's motion to amend the indictment to charge violation of subsection "841(a)(1)."

■ We review de novo the sufficiency of an indictment. *United States v. Oren*, 893 F.2d 1057, 1063 (9th Cir.1990).

■ In the present case, the indictment was amended to correct a clear typographical error. The typographical error did not mislead Lim as to the charges against him. Nor was he prejudiced by the incorrect citation of the subsection. Under these circumstances, the trial court did not err in allowing the amendment of the indictment.

### IV. Continuance to Obtain Witnesses

Lim appeals the district court's denial of his motion for a four-week continuance to obtain witnesses from California and the Philippines. The trial court found that the testimony of the proposed witnesses would not be relevant to the issues at trial and, alternatively, if relevant, that Lim had failed to exercise diligence in obtaining the witnesses.

■ We review the denial of a motion for a continuance for abuse of discretion. *United States v. Flynt*, 756 F.2d 1352, 1384 (9th Cir.), *modified on other grounds*, 764 F.2d 675 (9th Cir.1985).

■ Lim was incarcerated in Hawaii from April 30 through July 27, 1991. He could have conferred with his attorney and translator during this period in order to obtain the witnesses before the trial date. Moreover, the hearing on the continuance took place on September 4, and the trial did not begin until September 10, during which time Lim could still have arranged for his witnesses to appear. Under these circumstances, the trial court did not abuse its discretion in denying Lim's motion for a four-week continuance.

### V. Probable Cause for Arrest

Lim appeals the denial of his motion to suppress evidence derived from his warrantless arrest, which he contends was without probable cause.

■ A determination of probable cause is a mixed question of law and fact which this court reviews de novo. *United States v. Potter*, 895 F.2d 1231, 1233 (9th Cir. 1990). A district court's findings as to the underlying facts are reviewed only for clear error. *Id.*

■ Probable cause exists when the police have reasonably trustworthy information sufficient to lead a prudent person to believe that the accused has committed or is committing a crime. *United States v. Milner*, 962 F.2d 908, 913 (9th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 614, 121 L.Ed.2d 548 (1992).

■ Probable cause to arrest Lim was established by: (1) Lim's nervous behavior described above; (2) Apostol's statement that indicated the drugs belonged to the man in the yellow sweater—Lim; and (3) the flight itinerary carried by Apostol that referred to Lim. The district court, therefore, did not err in finding probable cause for Lim's arrest.

### VI. Sufficiency of the Evidence

■ Lim also appeals the district court's denial of his motion for acquittal based on insufficiency of the evidence. He argues that the government's case rested upon the testimony of Apostol and the drug courier profile evidence and was therefore insufficient to support the conviction.

There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of he crime beyond a reasonable doubt.' " *United States v. Bishop*, 959 F.2d 820, 829 (9th Cir.1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Apostol's testimony regarding the out-of-court statements was properly admissible. Testimony of an accomplice, if believed, is sufficient to sustain a conviction. *United States v. Vaccaro*, 816 F.2d 443, 455 (9th Cir.), *cert. denied*, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987). Moreover, Apostol's testimony was corroborated by the flight itinerary, flight tickets, and the agents' observations of the two men at the airport. There was sufficient evidence to sustain the conviction even without the testimony concerning the drug courier profile.

### VII. Totality of Circumstances

Lim argues that even though some errors in the trial may be harmless, the totality of errors requires reversal. We found only one error, the admission of drug courier profile evidence, and we found that error to be harmless.

AFFIRMED.