**Hwang Jae Corporation,**
Plaintiff/Appellee,

v.

**Marianas Trading and**
**Development Corporation,**
Defendant/Appellant.
Appeal No. 93-035
Civil Action No. 88-0889
July 19, 1994

---

Argued and Submitted March 8, 1994

Counsel for appellant: Eric Basse & James H. Grizzard, Saipan.

Counsel for appellee: Michael A. White, Saipan (White, Pierce, Mailman & Nutting).

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

ATALIG, Justice:

The appellant, Marianas Trading and Development Corporation ("MTDC"), appeals from orders denying its motion for continuance and taxing costs, as well as from the judgment. We hold that the trial court did not abuse its discretion in denying MTDC's motion to continue, and we affirm.

## ISSUES AND STANDARD OF REVIEW

The issues raised on appeal are:
(1) Whether the trial court erred in denying MTDC's motion for a continuance of the trial date; and
(2) Whether the court abused its discretion in granting MTDC's former counsel's motion to withdraw.

The denial of a motion for continuance is reviewed for an abuse of discretion. *Guerrero v. Guerrero*, 2 N.M.I. 61, 67 (1991) (citing *Commonwealth v. Bordallo*, 1 N.M.I. 208, 219-20 (1990), *appeal after remand*, 2 N.M.I. 226, 230 (1991)); *In re Adoption of Olopai*, 2 N.M.I. 91, 95-96 (1991). The disposition of a motion to withdraw as counsel is also reviewed for

abuse of discretion. *See Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 679 (3d Cir. 1986).

## FACTS AND PROCEDURAL BACKGROUND

The appellee, Hwang Jae Corporation ("Hwang Jae"), is engaged in the business of renting heavy construction equipment. On May 1, 1988, and in July of that same year, Hwang Jae rented to MTDC, respectively, a payloader and backhoe. While in the custody of MTDC, the equipment was damaged.

On December 2, 1988, Hwang Jae filed a complaint against MTDC, alleging that MTDC failed to pay rent on the payloader and negligently operated and damaged both the payloader and backhoe, causing loss of both the use of and income from the two pieces of equipment. MTDC, represented by attorney Douglas Cushnie ("Cushnie"), raised four defenses in its answer: (1) failure to state a claim; (2) contributory negligence; (3) assumption of the risk; and (4) unavoidable accident. At the time, the ownership and control of MTDC rested with Herman R. and Pedro R. Guerrero ("Guerreros").[1]

On January 26, 1989, the court granted partial summary judgment to Hwang Jae on the claim for unpaid rental fees. In early 1989 both MTDC and Hwang Jae conducted discovery regarding the remaining claims.[2]

Subsequently, several creditors of MTDC, including Mike Isoda ("Isoda"), filed a complaint against MTDC in the U.S. District Court for the Northern Mariana Islands. These plaintiffs were represented by Guam attorney Randall Cunliffe ("Cunliffe"). MTDC was represented by Cushnie. MTDC was put in receivership on March 22, 1989, and Hwang Jae moved to join that proceeding as a plaintiff in order to obtain the balance due on the partial summary judgment entered by the Superior Court. The District Court declined to rule on the joinder motion.[3]

MTDC remained in receivership, and on October 16, 1989, a Chapter 11 bankruptcy petition was filed against it in the District Court by the plaintiffs. The action against MTDC thereafter continued as one in bankruptcy. Hwang Jae was not given notice of the Chapter 11 petition. On July 6, 1990, Hwang Jae moved the District Court to enter an order allowing the Superior Court case to proceed to trial. The District Court denied the motion on March 12, 1991, and the Superior Court proceedings remained in abeyance. On November 12, 1991, MTDC moved to dismiss the Chapter 11 bankruptcy case. This motion was granted on December 26, 1991.[4] As a result of the District Court proceedings, the ownership and control of MTDC changed from the Guerreros to another group, one individual of which was Isoda.[5]

On December 16, 1992, Hwang Jae requested the Superior Court to set this matter for trial on the negligence issues. In its memorandum in support of setting the trial date, Hwang Jae represented to the court that the "case is now ready to be set for trial." Plaintiff's Memorandum to Set Case for Trial, *Hwang Jae v. Marianas Trading and Dev. Corp.*, Civ. No. 88-0889 (N.M.I. Super. Ct. filed Dec. 16, 1992). Hwang Jae also stated in its memorandum that the trial would last approximately two days. *Id.* On December 17, 1992, the court entered an order setting the case for trial on March 8, 1993. The trial date was "subject to reconsideration if opposition thereto is filed within ten (10) days." *Hwang Jae, supra* (order at 1). No opposition to the trial date was filed by MTDC.

On January 7, 1993, nearly eight weeks before the scheduled trial date, Cushnie wrote to Isoda informing him of his intent to withdraw as counsel. Attached to the letter was a copy of the order setting the March 8, 1993, trial date. In the letter, Cushnie requested that MTDC inform him of its choice of substitute counsel so that he could transfer the case files. He sent a copy of the letter to MTDC's attorney Cunliffe.

Cushnie and Cunliffe spoke on several occasions about MTDC's obtaining substitute counsel for the March trial.[6] Cushnie was initially informed by Cunliffe that either he or the Saipan law firm of Salas & Manibusan would represent MTDC.[7] On or before February 26, 1993, Cunliffe contacted the Saipan law firm of

---

[1] *See* Affidavit of Douglas Cushnie, *Hwang Jae v. Marianas Trading and Dev. Corp.*, Civ. No. 88-0889 (N.M.I. Super. Ct. filed Feb. 26, 1993).

[2] The record before us shows that MTDC filed a set of interrogatories to Hwang Jae on January 25, 1989, and also filed a request for production of documents. *See* Proceedings for Case No. 88-0889 *in* Appellant's Excerpts of Record.

[3] The District Court did, however, order that the receiver and Hwang Jae enter into a stipulation providing for payment of the partial summary judgment over an extended period of time. *Isoda v. Deleon Guerrero*, Civ. No. 89-0003 (D.N.M.I. July 27, 1989) (order).

[4] No notice of the dismissal was served upon Hwang Jae.

[5] *See* Affidavit of Douglas Cushnie, *supra* note 1.

[6] *Id.*

[7] *Id.*

James Grizzard ("Grizzard") seeking representation for MTDC.[8]

Cushnie was then informed by Cunliffe, on February 26, 1993, that Grizzard agreed to represent MTDC if a continuance of the trial was granted by the court. Cushnie confirmed this arrangement with Grizzard on the same day. Cushnie was informed by Hwang Jae's counsel that it did not oppose the withdrawal motion but would oppose a continuance of the trial date.[9]

On that same day, ten days before the trial date, Cushnie filed a motion to withdraw as MTDC's counsel. Cushnie grounded the motion upon his continued representation of the Guerreros, the previous owners and adversaries of MTDC's current ownership, and upon his claim that MTDC still owed him legal fees.[10]

On March 3, 1993, Grizzard filed motions for appearance as counsel, for trial continuance, and to shorten the time for hearing these motions. The grounds stated for the continuance motion were that Grizzard, as substitute counsel for Cushnie, would need at least ninety days to prepare for trial because "the file is not before him and counsel would have to have time for additional discovery, if necessary." Defendant's Motion for Continuance at 2, *Hwang Jae, supra* (filed Mar. 3, 1993). It was also noted in the motion that Grizzard would not appear or represent MTDC at trial unless the motion for continuance was granted. *Id.* This motion was heard and denied on Friday, March 5, 1993.

That same day Cushnie filed an ex parte motion to shorten time to hear his motion to withdraw. In the motion, Cushnie, who was off-island, requested that the motion be heard by telephone conference at three p.m. that day. This motion was granted and the court, after

hearing by telephone conference, granted his motion to withdraw. *Hwang Jae, supra* (order). The court based its order on the "potential for an adverse relation between the current owner of MTDC" and the Guerreros, the latter still being represented by Cushnie. *Id.* at 1.

This matter went to trial on March 8, 1993, as scheduled. MTDC was not represented by counsel. The court entered judgment the following day for Hwang Jae. On March 22, 1993, the court entered an order taxing costs against MTDC. MTDC timely filed its notice of appeal.

## DISCUSSION

MTDC argues that the court abused its discretion in granting Cushnie's motion to withdraw as counsel. Hwang Jae asserts that because MTDC failed to list the withdrawal order on its notice of appeal, we do not have appellate jurisdiction thereover.[11] We decline to consider the issue of the propriety of the grant of the withdrawal motion because MTDC improperly raises it for the first time on appeal.[12]

MTDC also argues that the trial court abused its discretion in denying its motion for a continuance of the trial date. For the following reasons, we hold that the trial court's denial of that motion was not an abuse of its discretion.

## I. MTDC Failed to Timely Object to Motion to Withdraw as Counsel

■■■ If an issue is not raised by a party at trial, we may consider it for the first time on appeal only if: (1) it is one of law not relying on any factual record; (2) a new theory or issue has arisen because of a change in law while the appeal is pending; or (3) plain error occurred and an injustice might otherwise result unless we consider the issue. *See Santos v. Matsunaga*, 3 N.M.I. 221, 231 (1992). We are not persuaded that any of the three

---

[8] At the March 5, 1993, hearing on the motion for continuance, Grizzard's associate, arguing the motion, stated:

> I apologize for, well, pushing this thing along in short order. I was really unaware that Mr. Grizzard and Mr. Cushnie has had [sic] some discussions a week previous concerning his, Cushnie's withdrawal. And, apparently, Attorney Cunliffe in Guam who handles a lot of MTDC's matters, called Mr. Grizzard and requested his office to put in an appearance. Mr. Grizzard had left a written note for me and I didn't discover it until the afternoon before yesterday.

Transcript of Proceedings on Defendant's Motion for Continuance at 2, *Hwang Jae, supra* note 1 (Mar. 5, 1993, statement of Eric Basse).

[9] *See* Affidavit of Douglas Cushnie, *supra* note 1.

[10] *Id.*

[11] In its notice of appeal filed with the Superior Court, MTDC listed only the date of March 5, 1993, and did not specify the order(s) from which it was appealing. In the notice filed with this Court, MTDC listed only the March 5, 1993, order denying the continuance and the ensuing judgment and order taxing costs.

[12] MTDC was aware of the motion prior to the hearing on its motion for continuance but did not take any action to oppose Cushnie's motion for withdrawal either through Grizzard at the hearing on the motion for continuance, or Cunliffe prior to the expedited hearing on Cushnie's motion.

exceptions apply. The withdrawal of counsel based upon a conflict of interest is an issue which relies in part on a factual record, and MTDC does not argue a pertinent intervening change in the law. Finally, reviewing only for plain error, we conclude that the granting of the unopposed motion to withdraw is not erroneous.

■ Pursuant to the AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT[13] 1.7 and 1.9, an attorney must withdraw from representation of a client where that attorney both believes a conflict either exists or may arise and has not obtained consent from the implicated client(s). One such situation is where the lawyer currently represents separate clients in either related matters or matters which give, or may give, rise to adverse interests.[14]

■ Cushnie sought leave of the court to withdraw pursuant to Com. R. Prac. 5(d). The disposition of this motion was within the broad discretion of the court. *Guerrero*, 2 N.M.I. at 67. Here, the court was faced with an unopposed motion by an attorney to withdraw based on a conflict of interest essentially going to current and adverse representation. These allegations were not contested by MTDC, which had been apprised of both Cushnie's intent to withdraw, nearly eight weeks prior to the trial date, and the filing of the motion. Furthermore, the motion for continuance was a result of the arrangement made between MTDC and Grizzard, consistent with Cushnie's unopposed withdrawal motion.

■ An unopposed withdrawal motion based upon adverse interests between nonconsenting clients is one which should be considered on its merits alone and not in light of procedural matters. *Cf. Sayler v. Elberfield Mfg. Co.*, 639 P.2d 785 (Wash. Ct. App. 1982) (court considers effect of previous withdrawal of nondiligent counsel on diligent party in continuance motion). The court found the potential for an adverse relation between MTDC and the Guerreros. We find no basis which warrants our consideration on appeal of the propriety of the granting of Cushnie's unopposed motion to withdraw.

## II. Court did not Abuse its Discretion in Denying MTDC's Motion for Continuance

■ The scope of review on issues relating to an alleged abuse of discretion is limited to whether or not there was a "manifest or gross abuse of discretion." *Robinson v. Robinson*, 1 N.M.I. 81, 86 (1990). Whether or not a denial of a continuance is an abuse of discretion turns largely upon the circumstances of the individual case. *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir.), *amended on other grounds*, 764 F.2d 675 (1985). These are to be considered in light of the four factors we adopted in *Bordallo*, 1 N.M.I. at 219-20 (citing *United States v. 2.61 Acres of Land, More or Less*, 791 F.2d 666, 671 (9th Cir. 1985) (citing *Flynt*, 756 F.2d at 1359)). Those factors are:

[1] [the] Movant's diligence in his efforts to ready his defense prior to the date set for hearing; [2] [t]he likelihood that the need for a continuance could have been met if the continuance had been granted; [3] [t]he extent [to which] a continuance would have inconvenienced the court and opposing party; and [4] [t]he extent [to which] the movant might have suffered harm as a result of the denial.

*Olopai*, 2 N.M.I. at 96 (citing *Bordallo*, 1 N.M.I. at 219-20).

We examine the facts of each case in relation to these four factors. *2.61 Acres*, 791 F.2d at 670. These factors are to be weighed, and no one factor is dispositive in affirming the trial court decision. *Id.* However, the appellant must be able to show that it was prejudiced by the denial for us to reverse the court's ruling. *Id.*[15] In considering and weighing these four factors, we conclude that the trial court did not abuse its discretion when it denied MTDC's motion for continuance.

### A. MTDC was not Diligent in Preparing Defense

MTDC argues that it was not prepared to defend because it needed additional time for its new counsel to obtain the court file and prepare the case, as well as to discern whether further discovery was needed. Hwang

---

[13] Any person practicing law in the Commonwealth "is subject to the disciplinary jurisdiction of the Courts of the Commonwealth and the Commonwealth of the Northern Mariana Islands Bar Association Disciplinary Committee." Com. R. Disc. 1. Under these rules the AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT [hereinafter MODEL RULES] in effect as of September 30, 1989, apply to those persons as well. *See* Com. R. Disc. 2.

[14] See generally MODEL RULES, *supra* note 13, 1.7(a)-(b) and 1.9(a).

---

[15] *See also United States v. 2.61 Acres of Land, More or Less*, 791 F.2d 666, 671 (9th Cir. 1985) ("Absent a showing of prejudice suffered by the appellant . . . this Court will not disturb the ruling below") (citing *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir.), *amended on other grounds*, 764 F.2d 675 (1985)).

Jae counters that MTDC was not diligent in securing substitute counsel. We agree with Hwang Jae.

Under the diligence factor of the *Bordallo* test, we examine the efforts of MTDC proper in seeking substitute counsel. *Cf. Guerrero*, 2 N.M.I. at 76; *Deleon Guerrero v. Nabors*, 4 N.M.I. 31, 34 n.2 (1993) (movant nondiligent even where counsel renewed motion to withdraw on day of trial); *Slaughter v. Zimman*, 234 P.2d 94, 95 (Cal. Ct. App. 1956) (court looks at defendant's efforts at retaining counsel after withdrawal to which it consented).

MTDC was ready for trial in December of 1993. It did not oppose the scheduling of the trial date. Thus, all discovery was completed and both parties were prepared to proceed to trial, a bench trial which was expected to last only two days. There is no evidence in the scant record which shows that MTDC itself was diligent in attempting to timely secure substitute counsel.

First, both MTDC and Cunliffe were apprised by letter of Cushnie's intent to withdraw nearly eight weeks before the scheduled trial date. *Cf. Guerrero v. Guerrero*, 2 N.M.I. at 76.[16] Attached to this letter as well was the notice of the trial date. Second, there is no evidence in the record that MTDC ever opposed Cushnie's motion to withdraw, although both MTDC and Grizzard were well aware of that motion. Third, MTDC did nothing to secure substitute counsel until the last week of February, 1994.[17] Fourth, MTDC agreed to the arrangement made by Cunliffe with Grizzard, and Cushnie filed his motion only after confirmation of this arrangement. Finally, MTDC accepted representation by Grizzard instead of seeking other substitute counsel, knowing that if a continuance was not granted it would not have representation. MTDC chose to appear at trial without counsel despite having counsel in Guam.[18]

---

[16] In *Guerrero*, we held that a party that was aware of her counsel's withdrawal one and one-half months prior to a rescheduled hearing had "more than sufficient time . . . to seek other counsel in the matter." *Guerrero v. Guerrero*, 2 N.M.I. 61, 76 (1991).

[17] The record shows that MTDC (through Cunliffe) and Cushnie discussed the matter of substitute counsel for MTDC but that no action was taken prior to the last week of February, 1994.

[18] It certainly would have aided the court if, for example, MTDC had submitted affidavits as to: (1) why Grizzard could not prepare for trial within one week; (2) whether the case was so complex that it would require more preparation and that the bench trial would last more than two days; (3) why Cunliffe, its Guam attorney, who is licensed to practice law in the Commonwealth, could not prepare and handle MTDC's defense; (4) why

That the motion for continuance was heard and denied three days before the scheduled trial date does not bear upon whether the movant was diligent in obtaining substitute counsel. *Cf. Nabors*, 4 N.M.I. at 34 n.2 (movant nondiligent in obtaining substitute counsel even where motions to withdraw and for continuance were, respectively, granted and denied on day of trial).

**B. Grant of Continuance would not Have Met Need**

Even if the continuance had been granted, it is not clear that its purported need would have been met. Here, the reasons stated by counsel for the requested ninety-day extension were that, because it did not yet have the file, it needed time to prepare for trial and "for additional discovery, if necessary." Defendant's Motion for Continuance at 2, *Hwang Jae, supra* (filed Mar. 3, 1993). "Waiting until the eleventh hour to move for a continuance in order to conduct discovery is inexcusable." *Manglona v. Kaipat*, 3 N.M.I. 322, 341 (1992).

In *Manglona*, we concluded that the court did not abuse its discretion in denying a motion for continuance where the sole purpose of the continuance was to obtain depositions and the movant neither attempted to obtain these nor explained to the court that it could not obtain them. *Id.* at 340-41. In this matter, discovery had already been pursued by both parties, and it is not clear that additional discovery was even necessary.

Additionally, the alleged discovery needed was not even "relevant to the subject matter involved in the pending action," as required under Com. R. Civ. P. 26(b)(1). To justify a continuance to procure evidence, the evidence sought must be relevant to the case. *Cf. United States v. Lim*, 984 F.2d 331, 337 (9th Cir.), *cert. denied*, 508 U.S. __, 113 S. Ct. 2944, 124 L. Ed. 2d 692 (1993) (criminal defendant failed to show planned witnesses' testimony relevant); *Cohn v. Brownstone*, 28 P. 953, 953 (Cal. 1892) (affidavit insufficient and failed to show relevancy of proposed testimony).

At the continuance hearing, MTDC's counsel characterized the case as one for product liability possibly resulting in personal injury, thereby necessitating

---

MTDC did not oppose Cushnie's motion to withdraw, although they were aware it had been filed; (5) why MTDC took until the last week of February to secure substitute counsel; (6) why Grizzard could not acquire the case file from Cushnie, MTDC, the court, or opposing counsel before filing the motion for continuance; (7) why Grizzard could not obtain the case file after filing the motion but before the hearing, so as to enlighten the court as to why a continuance would be necessary; or (8) MTDC's actions to secure other counsel and their response.

thorough discovery. Transcript of Proceedings on Defendant's Motion for Continuance at 2-3 *Hwang Jae*, *supra* (Mar. 5, 1993, statement of Eric Basse).[19] However, MTDC had not raised this point in its answer to Hwang Jae's complaint. We fail to see why MTDC would seek a continuance on a basis of a possible need for irrelevant discovery.

## C. *Inconvenience to Court and Hwang Jae*

 Had the continuance been granted, it would have inconvenienced not only the court, see *2.61 Acres*, 791 F.2d at 671 (court assumes continuance would inconvenience trial court) and compare *Ito v. Macro Energy, Inc.*, 4 N.M.I. 46, 61 (1993) (noting that court did not abuse discretion in not hearing summary judgment motion because "continuance would have required a shifting of the court's docket"),[20] but Hwang Jae as well. Hwang Jae filed its complaint in this matter more than four years before the continuance motion was heard. In addition, it contended in its opposition to the continuance motion that it had witnesses scheduled to appear, one of whom was coming from Guam, as well as an interpreter. *See* Appellant's Supplemental Excerpts of Record at 6-7.[21]

---

[19] Now I understand that this case concerns some kind of a piece of construction equipment that tipped over and injured somebody or something like that. Obviously, there's a potential—we have to explore whether there's some kind of product liability involved, whether there's another party defendant who actually is the true owner of the equipment. We don't know any of this.

Transcript of Proceedings on Defendant's Motion for Continuance, *supra* note 8, at 2-3 (Mar. 5, 1993, statement of Eric Basse).

[20] It is in the interest of judicial economy and efficiency that cases are resolved quickly, and the degree to which a court is inconvenienced will depend upon the circumstances involved in each case. Here, the case began in what was the Commonwealth Trial Court, was pending over four years and was before at least three different judges.

[21] We also note that Hwang Jae could potentially be seriously prejudiced by a delay, given the precarious nature of MTDC's financial position. *See, e.g.*, Petition (Chapter 11), *In re Marianas Trading and Dev. Corp.*, Bankr. No. 89-00003 (D.N.M.I. Bankr. Div. filed Oct. 16, 1989). Any delays could affect Hwang Jae's ability to have a favorable judgment satisfied.

## D. *Any Harm or Prejudice Resulted from MTDC's Lack of Diligence*

 MTDC does not appear to have suffered harm or prejudice which would warrant reversal. Where a party's own lack of diligence causes the prejudice of which the party complains, the denial of a requested continuance is not an abuse of discretion. *Guerrero*, 2 N.M.I. at 77. MTDC alleges that the court's denial of a continuance was an abuse of discretion "because the court effectively denied [it] the opportunity to present its case and to secure counsel." Appellant's Brief at 6. However, when the trial date was scheduled, MTDC was already prepared to proceed. Any harm MTDC may have subsequently suffered as a result of the denial of its motion for continuance was due to its own lack of diligence.[22]

 In those cases where we concluded that the trial court abused its discretion by denying a motion for continuance, a balancing of the factors for consideration weighed in the movant's favor *and* it was clear that the movant was prejudiced through no fault of its own. *See, e.g.*, *Olopai*, 2 N.M.I. at 96-97 (movant not afforded sufficient time to respond to petition); *Bordallo*, 1 N.M.I. at 218-20 (expert witness slated to testify on crucial issue in case unable to appear on scheduled date), *appeal after remand*, 2 N.M.I. at 230-31 (on remand original expert witness no longer able to testify and without continuance movant could not produce an expert witness). Here, the record is simply devoid of any evidence which would lead us to conclude that the court abused its discretion in denying the motion for continuance.

## CONCLUSION

Based on the foregoing, we hereby **AFFIRM** the Superior Court's order denying a continuance and the ensuing judgment and order taxing costs.

---

[22] In its brief MTDC cites *Sayler v. Elberfield Mfg. Co.*, 639 P.2d 785 (Wash. Ct. App. 1982), in support of the proposition that a continuance should be granted due to "a party's counsel's withdrawal for a conflict of interest, on the day of trial." Appellant's Brief at 8. However, in that case the continuance for which the defense moved was necessitated by the defense counsel's lack of diligence and not that of the defendant. The issue of the diligence of counsel (either Cushnie or Grizzard) is not before this Court.

VILLAGOMEZ, Justice, concurring:

I concur with the holding that the trial court did not abuse its discretion in denying the motion for a continuance based on the specific facts and procedural background of this case. I write separately to emphasize that an unrepresented party is seriously prejudiced whenever it is forced to go to trial against an opposing party represented by counsel. To impose such an imbalance in confrontation is "like forcing a [person] to fight a duel without a weapon." *Commonwealth v. Bordallo*, 1 N.M.I. 208, 219 (1990). It is inherently unfair and forces us to question whether justice is done. Giving MTDC an additional ten days (let us say) would have enabled it to secure the services of the new attorney, Mr. James Grizzard. The trial then would have started with both parties on the same footing.