95 F.3d 1158
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert BENNETT, Defendant-Appellant.
 No. 95-30252, 95-30384.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1996.
Decided Aug. 21, 1996.
 
 Before: REAVLEY,* REINHARDT, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In these consolidated appeals, Robert Bennett appeals the denial of his motion to dismiss his indictment on double jeopardy grounds, as well as his subsequent conviction on fifty counts of violating 18 U.S.C. § 1962(c), 18 U.S.C. § 1952(a)(3), 18 U.S.C. § 1029(a)(3), and 18 U.S.C. § 1956(a)(1)(A), (B), all arising out of his ownership of an escort service that served as a front for an organized prostitution ring. Bennett argues that his attempt to consent to judgment in a prior civil forfeiture barred his subsequent prosecution in the instant case. He also contends that (1) the district court erred in admitting the surveillance tapes of several conversations; (2) there was insufficient evidence to convict him of intent to defraud on the credit card fraud counts under 18 U.S.C. § 1029(a)(2); and (3) the district court gave conflicting jury instructions regarding the elements required to prove a violation of the Travel Act, 18 U.S.C. § 1952(a).
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. § 1291 and we AFFIRM.
 
 I.
 A.
 
 4
 Bennett argues in No. 95-30252 that the district court erred in failing to dismiss his indictment because jeopardy had attached with either the filing of the prior civil forfeiture action or his filing of a consent to judgment in that action. Both arguments fail. United States v. Ursery, 116 S.Ct. 2135 (1996) (holding that civil forfeitures do not constitute punishment for the purposes of the double jeopardy clause).
 
 B.
 
 5
 Bennett argues that the district court erred in admitting three taped conversations. We review the district court's decision to admit evidence for abuse of discretion. United States v. Lim, 984 F.2d 331, 335 (9th Cir.), cert. denied, 508 U.S. 965, 113 S.Ct. 2944 (1993). We can affirm the trial court's admission on a ground not considered by the trial court if the alternative theory would justify admission of the evidence. United States v. Nazemian, 948 F.2d 522, 530 (9th Cir.1991), cert. denied, 506 U.S. 835, 113 S.Ct. 107 (1992).
 
 A. Exhibit 350
 
 6
 The first claimed error is the admission of Exhibit 350, a taped conversation between Marlys Swails, the government's informant and a former escort, and an escort named Marie. In the conversation, Swails and Marie primarily discuss the sexual activity they had on past "dates" while working for Bennett.
 
 
 7
 We agree with Bennett that the conversation is not admissible as "verbal acts" of coconspirators because the statements do not in and of themselves show their agreement to enter into the conspiracy or that a conspiracy existed. See, e.g., Lim, 984 F.2d at 336 (coconspirator's testimony that he asked unindicted coconspirator for a job, was given a phone number to contact, was then asked to transport "shabu" (methamphetamine) to Chicago for $500, unindicted coconspirator agreed to give him a $300 advance and told him that "shabu" cost $120 a gram was admissible as verbal acts to show existence of agreement to transport illicit drugs); United States v. Brooklier, 685 F.2d 1208, 1219-20 (9th Cir.1981), cert. denied, 459 U.S. 1206, 103 S.Ct. 1194 (1982) (testimony that coconspirator told two others that defendant and other coconspirator wanted them to extort money from pornography dealer, testimony that coconspirator later reported back that they had done the job through another person, whom he then introduced to coconspirator who had asked them to do the job was admissible as verbal acts to show their involvement in the conspiracy).
 
 
 8
 Nor is the conversation admissible under Fed.R.Evid. 801(d)(2)(E) as statements of coconspirators made in furtherance of the conspiracy during the course of the conspiracy.[1] Here, the conversation between Marie and Swails was nothing more than a narrative of past activities, and as such was not in furtherance of the common objectives of the conspiracy. See Nazemian, 948 F.2d at 529-30 (dealer's historical statement regarding the fact that two purchasers of drugs had not paid him in the past was not in furtherance of the conspiracy); In re Sunset Bay Associates, 944 F.2d 1503, 1519 (9th Cir.1991) (revelations of past conduct were not in furtherance of the conspiracy).[2]
 
 
 9
 The government also argues that the conversation was admissible under Fed.R.Evid. 801(d)(2)(D) as a "statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D); see also In re Sunset Bay Associates, 944 F.2d at 1519 ("[T]he statements need only concern matters within the scope of the agency; they need not be made within the scope of the agency.").[3] Bennett contends, however, that at the time of the conversation, Swails was no longer working as an escort; thus, her statements were not made during the existence of her employment as an escort and were not admissible. Cf. United States v. Kirk, 844 F.2d 660, 663 (9th Cir.1988) (statements made by employees of time-share condo regarding the nature and quality of the time share units and the nature and extent of the contractual obligations to prospective customers were admissible as clearly falling within the scope of their agency or employment), cert. denied, 488 U.S. 890, 109 S.Ct. 222 (1988). While Swails was no longer working as an escort, and thus her statements concerning her past "dates" were not admissible, Marie's statements were admissible. Marie was working for Bennett as an escort and her statements concerned matters within the scope of her employment. Cf. Oki America, Inc. v. Microtech Intern., Inc., 872 F.2d 312 (9th Cir.1989) (Oki sales manager's statement that Oki had no intention of delivering the product to Microtech at the agreed upon price was not admissible because the manager also testified that Microtech was not within his geographical responsibilities and he knew nothing with regard to Microtech as a customer).
 
 
 10
 Thus, the district court abused its discretion in admitting Swails' statements in Exhibit 350 regarding her past dates. We conclude, however, that because Swails testified to her past activities when employed as an escort, her statements in Exhibit 350 were repetitive and therefore their admission was harmless.
 
 B. Remaining Evidentiary Objections
 
 11
 Bennett also contends that the excerpts in which (1) Bennett, Swails and Dan Rivisto discuss whether or not Rivisto paid Terene Toon (an escort) to perform oral sex, (2) Bennett and Swails discuss "Kimberly's" (another escort's) bisexuality and willingness to go on double calls and (3) Bennett and Swails discuss Swails' experience partying with Ian Fisher (Bennett's friend), should not have been admitted because they were substantially more prejudicial than probative under Fed.R.Evid. 403.
 
 
 12
 We disagree. In the latter two conversations, Bennett makes very probative admissions regarding his knowledge of the sexual activity engaged in by his escorts. In discussing the Swails experience with Ian, he states that "I told Terene to do him." In discussing Kimberly's bisexuality, Bennett states that she told him in her interview that she was willing to go on double calls. The first excerpt, however, has less obvious relevance. In that conversation, when asked by Swails, Rivisto denies paying Toon for oral sex. Nevertheless, this conversation, taken in conjunction with the conversation between Bennett and Swails in which Bennett states that Rivisto told him he paid Toon $100 for oral sex, again shows Bennett's knowledge of the sexual activity engaged in by his escorts. Moreover, in light of the extensive discussion of sexual activity by numerous witnesses, we do not believe the district court abused its discretion in finding that the prejudice did not substantially outweigh the probative value of this evidence. For the same reason, any error would be harmless.
 
 C.
 
 13
 Bennett also argues that there was insufficient evidence to sustain his conviction on credit card fraud. The panel reviews the sufficiency of the evidence to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979).
 
 
 14
 Bennett was convicted of six counts of Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(2), which provides:
 
 
 15
 Whoever ... knowingly and with the intent to defraud traffics in or uses one or more unauthorized access device during any one year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period ... shall, if the offense affects interstate or foreign commerce, be punished.
 
 
 16
 18 U.S.C. § 1029(a)(2). An access device is defined to include any "account number" that can be used "alone or in conjunction with another access device, to obtain money." 18 U.S.C. § 1029(e)(1). An access device is unauthorized if, inter alia, it was obtained with "intent to defraud." 18 U.S.C. § 1029(e)(3).
 
 
 17
 Bennett claims that the government's evidence of intent to defraud consisted solely of his failure to disclose on his merchant account applications that he was operating an escort service. He contends that intent to defraud cannot be based upon depriving a bank of the right to make an informed decision in issuing its merchant accounts. See United States v. Lewis, 67 F.3d 225, 232-34 (9th Cir.1995) (holding that the wire fraud statute did not protect the right to make an informed business decision; intent to defraud is the intent to deceive or cheat for the purpose of either causing financial loss to another or bringing about financial gain to oneself).
 
 
 18
 We reject this argument. First, Lewis relies upon McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875 (1987), which interpreted the mail fraud statute as only prohibiting schemes to defraud that deprive the victims of property rights, not intangible rights such as the right to have public officials perform their duties honestly. Lewis, 67 F.3d at 232-34. Under McNally, we have held that deprivation of certain intangible rights cannot suffice to show a violation of the mail or wire fraud statutes. See, e.g., id. (jury instructions defining intent to defraud as intent to deceive bank into making lending decisions which could cause a loss to the bank improper); United States v. Bruchhausen, 977 F.2d 464 (9th Cir.1992) (although wire fraud statute can extend to prohibiting schemes to defraud affecting intangible property rights, manufacturers' right to control the destination of their products after their sale is not such a property right); Lancaster Com. Hosp. v. Antelope Valley Hosp. D., 940 F.2d 397 (9th Cir.1991) (loss of market share is too amorphous to support a fraud claim under McNally ), cert. denied, 502 U.S. 1094, 112 S.Ct. 1168 (1992).
 
 
 19
 However, McNally 's definition of scheme to defraud is not appropriately applied to § 1029(a)(2). To begin, we can find no case that interprets "intent to defraud" in 18 U.S.C. § 1029 under McNally. Moreover, although McNally has been applied to interpret intent to defraud in the bank fraud statutes, see Lewis, 67 F.3d at 233 (interpreting intent to defraud under both wire fraud statute, 18 U.S.C. § 1343, and bank fraud statute, 18 U.S.C. § 1344), we have noted that cases interpreting the mail fraud statutes are relevant in interpreting the bank fraud statute because the bank fraud statute was modeled upon the mail and wire fraud statutes. See id. at 233 n. 12; United States v. Mason, 902 F.2d 1434, 1441 (9th Cir.1990) (bank fraud statute directly tracks the mail and wire fraud statutes; Congress took into account the wide body of case law interpreting the mail and wire fraud statutes when enacting the bank fraud statute).
 
 
 20
 The credit card fraud statute, on the other hand, was not modeled upon the mail and wire fraud statutes, but rather upon the Truth in Lending Act. See United States v. Turcks, 41 F.3d 893, 899-900 (3d Cir.1994) (18 U.S.C. § 1029(a)(2) is virtually identical to predecessor statute 18 U.S.C. § 1644(a) and was passed in order to combat dramatic increase in credit card fraud and to close a loophole in § 1644(a)), cert. denied, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995); United States v. Jacobowitz, 877 F.2d 162, 165-67 (2d Cir.) (discussing Congress' intent to broaden the reach of predecessor statute 18 U.S.C. 1644(a) in passing 18 U.S.C. § 1029(a)(2)), cert. denied, 493 U.S. 866, 110 S.Ct. 186 (1989). Moreover, the language of the mail fraud statute differs from that of the § 1029(a)(2).[4]
 
 
 21
 Finally, the legislative history of § 1029(a)(2) indicates that Congress intended "with intent to defraud" to be given a very broad reading. In discussing § 1029(a)(2), the Senate Report states that " '[w]ith intent to defraud' means that the offender has a conscious objective, desire or purpose to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." S.Rep. No. 368, 98th Cong., 2d Sess., reprinted in, 1984 U.S.C.C.A.N. 3647, 3652. See also Jacobowitz, 877 F.2d at 166 (citing Senate Report in support of broad definition of intent to defraud). This broad definition of intent to defraud encompasses Bennett's actions in this case.[5]
 
 
 22
 Here, there was evidence that the banks would not have opened merchant accounts for Bennett had they known the true nature of his business. Moreover, there was evidence that accounts for businesses such as prostitution services could lead to a bank loss. Finally, the jury could infer from Bennett's misrepresentations on his applications that he intended to defraud the banks into giving him these accounts.
 
 D.
 
 23
 Bennett argues that the jury instructions on the Travel Act violations impermissibly conflict. We review the issue of whether the jury instructions properly stated the elements of a crime de novo. Lewis, 67 F.3d at 232. Moreover, where two instructions conflict, we cannot presume that the jury followed the correct one. Id.
 
 
 24
 A Travel Act violation consists of (1) use of the mails or interstate facilities (2) with the intent to promote or facilitate the promotion of (3) any unlawful activity and (4) thereafter performs or attempt to perform an act to facilitate the unlawful activity. See 18 U.S.C. § 1952. "Any unlawful activity" is defined as "any business enterprise involving ... prostitution offenses in violation of the laws of the State in which they are committed." 18 U.S.C. § 1952(b).
 
 
 25
 The jury was instructed that the government must prove that Bennett used interstate facilities to promote or facilitate "unlawful activity, namely, a business enterprise involving prostitution offenses." The jury was further instructed that:
 
 
 26
 The term "promote" or "facilitate the promotion" of any illegal activity means to do any act that would cause the unlawful activity to be accomplished or to assist in the unlawful activity in any way.
 
 
 27
 The jury was also instructed as to the offenses under Washington State law of engaging in prostitution, patronizing a prostitute, or promoting or advancing prostitution. The instruction states that a person commits the state law offense of promoting or advancing prostitution when he "profits from prostitution" or "advances prostitution."
 
 
 28
 Bennett argues that the jury instructions thus conflicted in their definition of promoting prostitution. He claims that the jury could have convicted him of a Travel Act violation by finding that he "promoted" the unlawful activity of prostitution by profiting from it (as Instruction No. 23 permits), rather than, as instructed in Instruction No. 20, by finding that he did an act that would cause the unlawful activity to be accomplished or that he assisted in the unlawful activity in any way.
 
 
 29
 We disagree. The jury was properly instructed that "to promote" or "facilitate the promotion of" any illegal activity means to do an act that would cause the activity to be accomplished or to assist in the activity. The jury was also instructed as to the unlawful activities Bennett could be found to have promoted--all offenses involving prostitution. One of these offenses, promoting prostitution, is defined as being committed if a persons profits from prostitution. Thus, the jury could permissibly find that Bennett committed a Travel Act violation by "promoting" (as defined in Instruction No. 20) the state offense of "promoting prostitution." Cf. United States v. Stein, 37 F.3d 1407, 1410 (9th Cir.1994) (conviction for money laundering reversed where court properly instructed that defendant must know that proceeds laundered were derived from unlawful activity, but court also gave the jury a general instruction on knowledge which stated that the government was not required to prove that the defendant knew his actions were unlawful), cert. denied, 115 S.Ct. 1170, 130 L.Ed.2d 1124 (1995).
 
 II.
 
 30
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 Hon. Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We review " 'de novo the legal question of whether the government established a prima facie showing of conspiracy but apply a clearly erroneous standard in reviewing whether a challenged statement was made in the course and furtherance of a conspiracy.' " United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir.) (citation omitted), cert. denied, 114 S.Ct. 359 and 114 S.Ct. 573 (1993)
 
 
 [2]
 Cf. Arias-Villanueva, 998 F.2d 1503 (statement of coconspirator regarding plan to murder government informant was in furtherance of drug conspiracy since it demonstrated to members of the conspiracy what would happen to informants and protected the goals of the conspiracy by eliminating a source of evidence); United States v. Yarborough, 852 F.2d 1522, 1555-56 (9th Cir.) (statements relating details of murder of alleged government informant and murder of jewish critic of right wing supremacist organization were statements in furtherance of the conspiracy because they were made with the intent to keep coconspirators abreast of what the organization had done, was doing and would do in the future), cert. denied, 488 U.S. 866, 109 S.Ct. 171 (1988)
 
 
 [3]
 Bennett does not claim that there was insufficient evidence of the agency or employee relationship between himself and Swails and Marie. See United States v. Jones, 766 F.2d 412, 415 (evidence of agency must be substantial and may not be proven by alleged agent's extrajudicial statements)
 
 
 [4]
 18 U.S.C. § 1341 states in relevant part:
 Whoever, having devised ... any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... places in the post office or authorized depository for mail matter, any matter or thing whatever ... shall be fined not more than $1,000 or imprisoned.
 18 U.S.C. § 1029(a)(2) states in relevant part:
 Whoever ... knowingly and with intent to defraud traffics in or uses one or more unauthorized access devises during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period....
 
 
 [5]
 Even under McNally 's definition of intent to defraud the government was not required to prove that Bennett in fact caused a loss to the banks who issued the merchant accounts. See United States v. Powell, 973 F.2d 885, 889-90 (10th Cir.1992) (rejecting insufficiency of the evidence argument under § 1029(a)(2) where use of unauthorized access device did not cause a loss to the victim but did cause a gain to the perpetrator), cert. denied, 507 U.S. 991, 113 S.Ct. 1598 (1993). Cf. Mason, 902 F.2d at 1442 (bank fraud statute does not require proof of actual loss, but only proof of scheme that was reasonably calculated to deceive persons of ordinary prudence and comprehension that could lead to a loss). Thus, this court held in Mason that there was sufficient evidence of specific intent to defraud where the defendant's role in scheme influenced bank to continue providing immediate credit on a merchant credit card account and where the bank would not have opened the account had it known the account holder was processing credit card slips for a third party or was laundering credit charges for prostitution. Mason, 902 F.2d at 1443