**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Christopher Fredrick VonWILLIE, aka
Christopher Fred VonWillie,
Defendant–Appellant.**

No. 94–10291.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 1995.

Decided July 6, 1995.

Mark J. Berardoni, Phoenix, AZ, for defendant-appellant.

Patrick J. Schneider, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: NORRIS, WIGGINS, and FERNANDEZ, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Christopher F. VonWillie was convicted of being a felon in possession of firearms and of using a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1). He was sentenced to 33 months imprisonment on the first count and 60 months imprisonment on the second count, to be served consecutively with each other and with a state court sentence that he is currently serving. He appeals both his conviction and his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

On the morning of December 26, 1991, officers from the Phoenix Police Department and the Arizona Department of Public Safety conducted a warrant search of VonWillie's residence. As a result, several packages of methamphetamine, three firearms (two of which were loaded), assorted drug paraphernalia, and over $3,000 in cash were seized.

The warrant was based on information obtained from a reliable confidential informant, police surveillance of the property, and prior investigations of Phoenix-area motorcycle gangs. The information indicated that drugs and weapons were likely to be found in the house, and that VonWillie, a motorcycle gang "warlord," was possibly dangerous. VonWillie does not challenge the warrant's validity, but he does challenge the circumstances surrounding its execution.

Before the warrant was executed, all of the participating officers except Sergeant Anderson attended a briefing. At the briefing, Detective Ballentine warned that VonWillie could be armed and the Special Assignments Unit described the plan of entry.

The actual entry did not proceed according to plan. The group of officers who were to execute the warrant knocked and announced their presence at a side door that turned out to open into a separate apartment that was unaccessible to the rest of the house. That group of officers then went to the rear of the house and knocked and announced their presence at a back door. They subsequently made a forced entry there. After the group had started knocking at the side door, but before they had entered at the back door, a series of significant but disputed events took place at the front door.

During this time period, Sergeant Anderson (apparently confused about his role) got out of his marked police car, which he had parked in front of the house, and he

approached the front door. Before Anderson could knock, VonWillie opened the door. Anderson did not inform VonWillie that he was there to execute a search warrant. Instead, he said that he had received a report of a disturbance. VonWillie answered that there was no disturbance and began to shut the door. At this time, Detective Whitlow rushed to the front door with his gun drawn, ordering VonWillie out of the house. He grabbed VonWillie, pulled him onto the front porch, and handcuffed him. Whitlow explained at the suppression hearing that he had been surprised to see Anderson confronting VonWillie. He had feared that Anderson was in danger and that VonWillie might go back inside and get a weapon or destroy evidence. At some point during the encounter, Whitlow announced his identity and purpose to VonWillie, but the parties dispute when that occurred.

After a two-day hearing, the district court denied VonWillie's motion to suppress the evidence seized from his house. The court also denied various other pretrial motions, jury instruction requests, and VonWillie's Rule 29 motion for acquittal.

The jury convicted VonWillie on both counts, and he was sentenced on May 23, 1994 to consecutive terms of imprisonment. Those prison terms were also imposed to run consecutively to a state court sentence for a drug offense that arose from the same search of VonWillie's home. VonWillie timely appeals both his conviction and his sentence.

## DISCUSSION

### I. "KNOCK AND ANNOUNCE" STATUTE

Prior to trial, VonWillie moved to suppress the evidence seized from his home, arguing that the officers executing the search warrant violated the federal "knock and announce" statute, 18 U.S.C. § 3109. Section 3109 requires "police officers [to] knock, an-

nounce and be refused entry before they break into a residence. Exigent circumstances excuse noncompliance." *United States v. Turner,* 926 F.2d 883, 886 (9th Cir.), *cert. denied,* 502 U.S. 830, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991).

Following a two-day evidentiary hearing, the district court denied the motion, concluding that the requirements of section 3109 were satisfied because the officers had knocked and announced their presence and purpose before entering. The district court also concluded that exigent circumstances existed that excused noncompliance with section 3109.[1] We affirm on the latter ground.

■ This court reviews *de novo* the district court's denial of the suppression motion and its conclusion that exigent circumstances were present. *United States v. Becker,* 23 F.3d 1537, 1539 (9th Cir.1994). The district court's underlying factual findings are reviewed for clear error. *Id.*

■ The determinative issue here is whether the entry at the front door was permissible.[2] The relevant sequence of events is as follows: There was no knock at the front door—VonWillie opened the door before Anderson could knock and the door was not yet closed when Whitlow reached it; Whitlow did announce his identity and purpose as he reached through the door and grabbed VonWillie; Whitlow and another officer subsequently entered the house through the front door; there was no explicit refusal of entry by VonWillie (although VonWillie attempted to shut the door, that was after he had answered Anderson's pretextual question and *before* Whitlow announced his identity and purpose); and the entry occurred through a partially open door and did not require physical destruction of property.

■ Based on the foregoing description, we characterize Whitlow's initial reaching through the door and the officers' subsequent

---

1. Specifically, the court found that immediate entry was necessary "for [the officers'] protection and the protection of others inside as well as to prevent the destruction of any drugs in defendant's possession or in the home."

2. There apparently is no dispute that the entry at the back door complied with section 3109. However, because the district court found that the initial entry occurred at the front door, and because that finding is not clearly erroneous, suppression is required if that entry was impermissible.

entry as a simultaneous, no-refusal entry. Such an entry is permissible if at least "mild exigent circumstances" were present. *See United States v. McConney*, 728 F.2d 1195, 1206 (9th Cir.) (en banc) (mild exigency is sufficient to justify simultaneous knock/announce and entry if entry does not require physical destruction of property), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Whitney*, 633 F.2d 902, 909 (9th Cir.1980) ("only a mild indication of exigency is required to excuse noncompliance with the 'refusal of admittance' requirement of section 3109"), *cert. denied*, 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981).

There were two types of exigent circumstances in this case: foreknown exigencies and unexpected exigencies that arose during the execution of the warrant. The foreknown exigencies included the officers' reasonable belief that VonWillie was armed and dangerous and that he had both weapons and drugs inside the house. The on-the-scene exigencies arose because of the misunderstanding regarding the role Anderson was to play in executing the warrant. As a result of this misunderstanding, Anderson actually confronted VonWillie at the front door (instead of remaining in his patrol car to apprehend anyone who tried to escape from the house). This surprised and worried Whitlow, who could see but not hear the exchange between VonWillie and Anderson. Whitlow was aware that VonWillie might be armed or have weapons within the house. Whitlow had heard the other officers knocking and announcing at the side door and reasonably could conclude that VonWillie had been alerted to their presence. He could see that Anderson's gun was not drawn. He knew there might be drugs in the house and it was reasonable for him to think that after seeing a policeman at his door and possibly hearing the other officers at the side door, VonWillie would go back inside and try to get rid of the drugs or arm himself.

We conclude that Whitlow had a reasonable and sincere fear that Anderson was in

jeopardy and contraband might be destroyed. This usually constitutes sufficient exigency to justify a simultaneous, no-refusal entry. *See McConney*, 728 F.2d at 1206; *Whitney*, 633 F.2d at 909–10.[3]

■ VonWillie argues that a different result is required in this case for two reasons. We reject both. First, VonWillie contends that the officers' noncompliance with section 3109 cannot be excused on the facts here because the officers created their own exigency. In the context of warrantless entries and searches, this court has held that exigencies created by the government cannot be the basis for excusing compliance with the warrant requirement. *See, e.g., United States v. Hackett*, 638 F.2d 1179, 1183–85 (9th Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Curran*, 498 F.2d 30, 34 (9th Cir.1974). Even assuming that this rule applies in the knock and announce context, the officers' actions in this case did not violate it. The rule has been applied only in cases where exigencies arose "because of unreasonable and deliberate [conduct] by officers," in which the officers "*consciously established* the condition which the government now points to as an exigent circumstance." *See, e.g., Curran*, 498 F.2d at 34 (emphasis added); *Hackett*, 638 F.2d at 1183; *United States v. Calhoun*, 542 F.2d 1094, 1102–03 (9th Cir.1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977). In this case, by contrast, the government's intent and concerted effort to execute the warrant using a knock-and-announce procedure was frustrated by an honest miscommunication. This is not a case where the government purposely tried to circumvent the requirements of section 3109. *Cf. Hackett*, 638 F.2d at 1184–85; *Curran*, 498 F.2d at 33–34. Because the sort of intentionally evasive behavior found in other cases was absent in this case, the rule does not require us to invalidate the entry.

---

**3.** We note that the exigencies in this case did not rest on the sort of "unspecific fears" that we found insufficient to justify the entry in *Becker*, 23 F.3d at 1541. Instead, the officers' fears were specific, reasonable and justified. They had every reason to think that VonWillie was dangerous, armed, and in possession of illegal drugs.

Second, VonWillie argues that foreknown exigent circumstances—such as his suspected weapon and drug possession—cannot be the basis for excusing compliance with the knock and announce statute. VonWillie's reliance on *United States v. Stewart,* 867 F.2d 581, 584–85 (10th Cir.1989), to support his argument is misplaced. Neither *Stewart* nor any Ninth Circuit case has endorsed the view that information known beforehand may not be included in an assessment of exigent circumstances. *Stewart* involved a *planned* extremely forceful entry, in which S.W.A.T. team officers used a steel battering ram to knock down a door, "without any warning whatsoever," and immediately threw a stun grenade inside. 867 F.2d at 582–84. The Tenth Circuit concluded that the exigencies put forth by the government did not justify this entry, where (1) *all* the claimed exigencies were known at least 24 hours before the entry; (2) most of the facts used to justify the mode of entry were "generalities that bore no relation to the particular premises being searched or the particular circumstances surrounding the search"; and (3) of the two specific facts known to the officers, one was stale and an isolated incident, and the other was an improper consideration (the suspect's ethnicity). *Id.* at 584–85.

We agree with the Seventh Circuit that *Stewart* cannot be reduced to the simple proposition that foreknown exigencies cannot excuse noncompliance with section 3109. *See United States v. Howard,* 961 F.2d 1265, 1268 (7th Cir.) (rejecting argument similar to VonWillie's as "read[ing] *Stewart* far too broadly and ... impos[ing] an unrealistic burden on law enforcement officers"), *cert. denied,* —— U.S. ——, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992). Moreover, the facts of this case include newly arising exigencies, so that application of *Stewart* would be inappropriate even if that case could be read as rigidly as VonWillie suggests. As the Seventh Circuit noted, "[t]o deny law enforcement officers the right to react to ... an immediate danger simply because they had knowledge that they were operating in a potentially dangerous situation is totally unrealistic." *Howard,* 961 F.2d at 1268.

In sum, we conclude that the exigencies in this case—those foreknown in combination with those that arose on the scene—constitute the "mild exigencies" necessary to justify Whitlow's simultaneous, no-refusal entry.

## II. PROSECUTORIAL VINDICTIVENESS

VonWillie argues that the government violated his due process rights by conditioning its plea offer on VonWillie's agreement not to pursue his suppression motion. The district court rejected the argument and denied VonWillie's motion to dismiss. The proper standard of review for this claim is unsettled. *United States v. Montoya,* 45 F.3d 1286, 1291 (9th Cir.1995) ("The court has variously applied abuse of discretion, clearly erroneous, and *de novo* standards."). Even under the *de novo* standard, we affirm the district court's ruling.

After VonWillie rejected the government's plea offer and proceeded with his suppression motion, the government withdrew its offer. The government did not institute additional or more severe charges. VonWillie has produced no evidence of actual vindictiveness, and the prosecutor's institution of *identical* charges does not create an appearance of vindictiveness. *See United States v. Gallegos–Curiel,* 681 F.2d 1164, 1168 (9th Cir.1982). Absent actual or apparent vindictiveness, VonWillie has failed to establish a prima facie case that the conditional plea offer was an impermissible response to his exercise of a protected right. *See Montoya,* 45 F.3d at 1299–1300; *Gallegos–Curiel,* 681 F.2d at 1168–69.

## III. JURY INSTRUCTION ON "IN RELATION TO" ELEMENT OF 18 U.S.C. § 924(c)

VonWillie was convicted on count 2 of "using a firearm in relation to a drug trafficking crime," in violation of 18 U.S.C. § 924(c). He argues that the district court's jury instructions misstated the law and permitted the jury to convict him without proof of a nexus between the firearm and the underlying drug trafficking crime. We review *de novo* whether a jury instruction misstates the elements of a statutory crime.

*United States v. Blinder,* 10 F.3d 1468, 1477 (9th Cir.1993).

The trial court, over VonWillie's objection, instructed the jury as follows:

> In order to convict the defendant of using a firearm during and in relation to a drug trafficking crime, you must all agree that the defendant committed the drug trafficking crime of possession with intent to distribute methamphetamine, and all unanimously agree that the defendant use[d] at least one firearm during and in relation to that drug trafficking crime. *The firearm involved at least must facilitate or have the potential of facilitating the drug trafficking crime.*

(emphasis added). The Supreme Court has explained that section 924 does not permit a conviction without a nexus between the firearm and the drug crime because the "in relation to" language of the statutory section means that "the gun at least must 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." *Smith v. United States,* — U.S. —, —, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993) (quoting *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985)). The instruction in this case thus traced the Supreme Court's language in *Smith.* We hold that the district court's instructions adequately covered all elements of the offense. VonWillie was not entitled to have the jury instructed in the precise language he desired. *See United States v. Powell,* 955 F.2d 1206, 1210 (9th Cir.1991).

## IV. MOTION FOR ACQUITTAL UNDER FED.R.CRIM.P. 29

 The district court denied VonWillie's Rule 29 motion for acquittal. We review the evidence presented against VonWillie in the light most favorable to the government to determine whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "

*United States v. Shirley,* 884 F.2d 1130, 1134 (9th Cir.1989) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

VonWillie argues that no rational trier of fact could have found that he possessed the firearms seized in his house or that he possessed and used the weapons "in relation to" a drug trafficking crime. However, the evidence presented in this case permits a rational trier of fact to reach both conclusions. For example, three guns were found in VonWillie's bedroom closet. Drugs and drug-related paraphernalia were found throughout the bedroom and in the closet near the guns. Officer Symes testified that one of the guns was of a type used by drug traffickers because of its intimidation value. VonWillie told Detective Blalock at the time of the search that anything found in his bedroom belonged to him and that he "handled the business." In light of this evidence, VonWillie's Rule 29 motion was properly denied.

## V. ADMISSION OF GOVERNMENT WITNESSES' TESTIMONY

### A. ATF Special Agent Reyes

 ATF Special Agent Reyes, an interstate nexus expert, testified that the firearms seized at VonWillie's residence were all manufactured outside of Arizona and therefore must have travelled in interstate commerce. VonWillie argues that Reyes' testimony should have been excluded because VonWillie received insufficient notice of the government's intent to call Reyes as an expert. *See* Fed.R.Crim.P. 16(a)(1)(E).[4] We review the district court's admission of Reyes' testimony deferentially, although we have characterized our standard of review in different ways. *See United States v. Rahm,* 993 F.2d 1405, 1409–10 (9th Cir.1993) (noting different iterations and concluding that there

---

4. Rule 16(a)(1)(E) requires that the government "disclose to the defendant a written summary of [expert] testimony the government intends to use ... during its case in chief." Although subsection (a)(1)(E) does not include specific timing requirements, "it is expected that the parties will make their requests and disclosures in a timely fashion." Fed.R.Crim.P. 16 advisory committee notes.

We assume without deciding that the government was required to comply with Rule 16(a)(1)(E), even though that subsection did not take effect until after discovery in this case had been essentially completed, and even though VonWillie never made a specific request for Rule 16(a)(1)(E) material after the effective date.

is "no practical difference" between them). We, like *Rahm,* characterize the standard as "abuse of discretion," and we hold that under this standard, the district court did not err by admitting Reyes' testimony.

Approximately a year before trial, the government provided VonWillie's counsel with a discovery letter, identifying "attachment 9" to the letter as the "report of interview with ATF firearms expert, Robert Reyes." This report apparently contained Rule 16(a)(1)(E) material. The letter also stated that "any and all evidence or items included in the report will be sought to be introduced at trial." Although attachment 9 apparently was not in fact attached to the letter, VonWillie had sufficient notice of the government's intent to call Reyes as an expert, based on the foregoing facts. If VonWillie had not chosen to wait nearly a year before informing the government, immediately prior to trial, that he had not actually received attachment 9, he also would have known well before trial the subject matter of Reyes' proposed testimony.

### B. Officer Symes

■ Officer Symes testified as a lay witness about the nexus between drug trafficking and the possession of weapons. Specifically, he testified that in his experience with the Drug Enforcement Bureau, (1) it was common for drug traffickers to possess and use weapons in order to protect their drugs and to intimidate buyers; (2) the MK–11, one of the guns found in VonWillie's bedroom, was a particularly intimidating gun and he knew of drug dealers who used that specific weapon; and (3) drug traffickers commonly kept a weapon near their drugs. These observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion.

■ We review the admission of lay opinion testimony deferentially, although here, too, our cases describe our standard of review in different ways. *See United States v. Simas,* 937 F.2d 459, 464 (9th Cir.1991) (reviewing for "manifest error"); *United States v. Juvenile Male,* 864 F.2d 641, 647 (9th Cir.1988) (reviewing for "clear abuse of dis-

cretion"). Again, we will characterize the standard as "abuse of discretion," and we hold that the district court did not err under this standard by admitting Symes' testimony.

Symes' testimony was rationally based on his perceptions during the search at VonWillie's residence and his perceptions during prior drug investigations. *See* Fed.R.Evid. 701(a). His testimony also was helpful to the jury's "determination of a fact in issue," *see* Fed.R.Evid. 701(b), namely whether VonWillie was involved in drug trafficking and whether he used a firearm "in relation to" a drug offense. *See Simas,* 937 F.2d at 464–65 (the opinion of a law enforcement officer, who testified as a lay witness, "that the defendant's activities match 'the usual criminal *modus operandi,*'" is helpful to the jury and permissible under Rule 701(b)) (citation omitted).

## VI. SEVERANCE OF COUNTS IN THE INDICTMENT

VonWillie argues that the district court should have severed the counts of the indictment pursuant to Fed.R.Crim.P. 8(a) and 14. We disagree.

### A. Misjoinder Under Rule 8(a)

■ Rule 8(a) permits an indictment to charge multiple offenses as long as the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." We review *de novo* whether charges in the indictment were properly joined. *United States v. Vasquez–Velasco,* 15 F.3d 833, 843 (9th Cir.1994). In making our assessment, we examine only the allegations in the indictment. *United States v. Terry,* 911 F.2d 272, 276 (9th Cir.1990). VonWillie's indictment charges him in count 1 with possessing the same three weapons that he is charged in count 2 with using in relation to a drug trafficking crime. Testimonial and physical evidence relating to the location, discovery, and seizure of the firearms is also common to both counts. This is sufficient to satisfy Rule 8(a). *Cf. id.* at 276 (finding joinder improper where alleged of-

fenses were not of similar character or part of the same or common scheme, and where evidence did not overlap).

### B. Severance Under Rule 14

■ The crux of VonWillie's argument is that he was prejudiced by the court's failure to sever counts 1 and 2 for trial. This alleged error is addressed under Rule 14, which provides that the district court "may order an election or separate trials of counts" if "it appears that a defendant ... is prejudiced by a joinder of offenses." VonWillie argues that he was prejudiced by the admission of "other bad acts" evidence that was only admissible as to one count.

■ This court evaluates prejudice on a case-by-case basis to determine whether a refusal to sever was an abuse of the trial court's discretion. *Vasquez–Velasco*, 15 F.3d at 844. Where, as here, prejudice allegedly arises from the admission of "other bad acts" evidence, this court recognizes a " 'high risk of undue prejudice.' " *United States v. Lewis*, 787 F.2d 1318, 1322, *amended*, 798 F.2d 1250 (9th Cir.1986) (citation omitted). Nevertheless, VonWillie has not shown the "clear, manifest, or undue prejudice" required to justify reversal for failure to sever. *See Vasquez–Velasco*, 15 F.3d at 845–46.

First, the evidence of VonWillie's guilt on both counts was overwhelming. *Cf. Lewis*, 787 F.2d at 1322–23 (reversing denial of severance motion where evidence on second count was "sparse" and conviction was likely affected by other bad acts evidence admissible only as to first count). For example, as to count 1 (felon in possession of firearms), three guns were found in VonWillie's bedroom in a closet that contained his clothes; VonWillie stated that everything in the bedroom belonged to him; and he stipulated to a prior felony conviction. As to count 2 (use of a firearm in relation to a drug trafficking crime), three firearms were found in VonWillie's bedroom; one firearm was in his closet in close proximity to illegal drugs; VonWillie stated that everything in the bedroom belonged to him and that he "ran the business"; two of the guns were loaded; and VonWillie was heavily involved with methamphetamines

and had substantial amounts of illicit drugs in his home.

Second, the court in this case took extensive precautions to guard against undue prejudice. *Cf. Lewis*, 787 F.2d at 1322–23 (reversing denial of severance motion in a case where the prosecutor repeatedly emphasized the defendant's prior felony conviction and the trial court did not give a limiting instruction until three days after the prosecutor commented on the conviction). For example, the government offered to and did stipulate to VonWillie's prior felony conviction and promised not to focus on it unless VonWillie raised the issue; the district court limited the government's presentation of the evidence; and the court gave limiting instructions regarding the jury's use of the evidence both when the evidence was admitted and when charging the jury.

We hold that the district court properly denied VonWillie's motion to sever.

### VII. SENTENCING ISSUES

■ VonWillie challenges his sentence, claiming that the lower court improperly applied the Sentencing Guidelines. This court reviews application of the Guidelines *de novo*. *United States v. Redman*, 35 F.3d 437, 438 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 922, 130 L.Ed.2d 802 (1995). We reject VonWillie's claims of sentencing error.

■ First, the district court properly applied U.S.S.G. § 5G1.3(c) & application note 3 (Nov. 1993) when it imposed the sentence on count 1 to run consecutively with VonWillie's state sentence. *See United States v. Mun*, 41 F.3d 409, 413 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1722, 131 L.Ed.2d 580 (1995); *Redman*, 35 F.3d at 439–42.

■ Second, we reject VonWillie's argument that the 476 days he spent in custody pursuant to a federal writ should have been credited toward his federal sentence. That time *was* credited toward his state sentence. Because the federal sentence will run consecutively to the state sentence, the 476 days in fact have been credited toward his total term of incarceration. The out-of-circuit case cited by VonWillie, *United States v. Benefield*,

942 F.2d 60 (1st Cir.1991), is not to the contrary. *See id.* at 66–67 (requiring time served to be credited toward federal sentence, even though it had already been credited toward state sentence, only because federal sentence was to run *concurrently* with state sentence).

## CONCLUSION

For the foregoing reasons, VonWillie's conviction and sentence are AFFIRMED.