**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marty WEBB, Defendant–Appellant.**

**No. 96–50160.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1997.

Decided June 9, 1997.

Richard D. Burda, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellant.

Aaron S. Dyer, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before FLETCHER and TROTT, Circuit Judges, and JENKINS, District Judge.*

TROTT, Circuit Judge.

## I. OVERVIEW

Marty Webb appeals his conviction following a jury trial for possession of ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). The sole issue on appeal is whether the district court abused its discretion by admitting police expert testimony regarding the reasons criminals conceal weapons in the engine compartments of their cars. Because the expert testimony in this case is proper expert testimony regarding criminal modus operandi, we affirm.

## II. BACKGROUND

On October 17, 1995, Los Angeles law enforcement officers executed a search warrant for Webb's person and vehicle. Informants had told the officers that Webb was dealing

---

* The Honorable Bruce S. Jenkins, Senior District Judge for the District of Utah, sitting by designation.

cocaine and that he was carrying a firearm. Webb had a reputation for being armed and violent. During the search, the officers found a loaded semiautomatic pistol wrapped in a shirt and concealed in the car's engine compartment. There were no fingerprints on the weapon.

Because Webb had three prior felony convictions, the Government charged him with being a felon in possession of ammunition.[1] Prior to trial, the Government informed Webb's attorney that it intended to introduce expert testimony regarding the reasons people typically hide guns in the engine compartments of cars. The Government proffered that the police expert's testimony would establish that people typically conceal weapons in the engine compartment of a car for two reasons: 1) so that they have ready access to the gun, but police do not easily discover it; and 2) so that they can disclaim knowledge of the weapon if police do discover it. Webb objected to this proposed testimony on the grounds that it was inadmissible reputation evidence, that it was irrelevant, and that it was more prejudicial than probative.

At trial, Webb's main defense was that he did not know the gun was in his car. Over Webb's objection, the district court allowed the police expert to testify that:

- it is typical for people to conceal weapons in the engine compartments of their cars;
- people typically conceal weapons in the engine compartments because police seldom search there;
- people typically conceal weapons in their cars so that the weapons are easily accessible, as compared with storing the weapons at home; and
- people typically store weapons in the engine compartments rather than the passenger compartments because, if discovered, it is easier to claim that they did not know about the weapon.

The expert used the term "people" rather than "criminals" in an effort to mitigate any

potential prejudice. He did not offer an opinion as to whether Webb knew the weapon was in his car.

The jury returned a guilty verdict.

## III. STANDARD OF REVIEW

■ We review a district court's decision to admit expert opinion testimony for abuse of discretion. *United States v. VonWillie*, 59 F.3d 922, 928 (9th Cir.1995).

## IV. DISCUSSION

Webb claims that the expert's testimony should have been excluded because: 1) it was improper and unduly prejudicial modus operandi evidence; 2) it was similar to drug courier profile evidence; 3) it consisted of opinions on the ultimate issue in the case-Webb's knowledge of the gun's presence; and 4) it was unreliable expert testimony prohibited by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). As discussed below, these claims are meritless.

### A. Probative Value and Prejudicial Effect

■ If "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," a qualified expert witness may provide opinion testimony on the issue in question. Fed.R.Evid. 702. The expert testimony that people conceal firearms in the engine compartment of their cars to avoid arrest and prosecution was relevant to and probative of Webb's knowledge of the gun's presence. Moreover, the testimony explained evidence about the gun's whereabouts that easily could have been beyond the knowledge of an average juror. The question therefore becomes whether the testimony's possible prejudicial effect substantially outweighed its probative value. Fed.R.Evid. 403.

In analogous cases, we have held that drug-enforcement experts may testify that a defendant's activities were consistent with a common criminal modus operandi. *See Unit-*

---

1. The government had sufficient evidence to establish the requisite interstate commerce nexus for the ammunition found in the gun, but not for the gun itself.

ed States v. Johnson, 735 F.2d 1200, 1202 (9th Cir.1984) ("[G]overnment agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi."). This testimony "helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." *Id.* Further, we even allow modus operandi expert testimony in cases that are not "complex." *United States v. Gil,* 58 F.3d 1414, 1422 (9th Cir.) (rejecting defendants' contentions that the "modus operandi testimony was more prejudicial than probative because the activities described are not complex ones requiring expert explanation"), *cert. denied,* — U.S. ——, 116 S.Ct. 430, 133 L.Ed.2d 345 (1995).

In *Gil,* the district court permitted the Government to offer expert testimony that drug traffickers often employ counter-surveillance driving techniques, register cars in others' names, deliver narcotics and cash in public parking lots, and frequently use pagers and public telephones. *Id.* at 1421–22. Noting a long line of cases allowing modus operandi testimony, we held that the admission of this testimony was not an abuse of discretion. *Id.* at 1422; *see also United States v. Espinosa,* 827 F.2d 604, 611–12 (9th Cir.1987) (allowing expert testimony regarding the use of apartments as "stash pads" for drugs and money); *United States v. Patterson,* 819 F.2d 1495, 1507 (9th Cir.1987) (allowing expert testimony on how criminal narcotics conspiracies operate); *United States v. Maher,* 645 F.2d 780, 783 (9th Cir.1981) (per curiam) (permitting expert testimony that defendant's actions were consistent with the modus operandi of persons transporting drugs and engaging in counter-surveillance); *cf. United States v. Boykin,* 986 F.2d 270, 275 (8th Cir.1993) (allowing testimony that "the type of firearms found in [the defendant's] home, their location, and the fact that they were loaded was significant to their usefulness and availability for use in connection with a drug business").

The above cases are analogous to the instant case. In the drug cases, the testimony was necessary to inform the jury of the techniques employed by drug dealers in their illegal trade. Here, the expert testimony similarly was necessary to inform the jury that concealment of weapons in the engine compartment of a car: 1) indicates an intention on the part of the person who put them there to avoid detection; and 2) does not necessarily indicate that the occupant of the car did not know of the weapon's presence.

The expert's testimony in the instant case is also similar to the expert testimony consistently admitted in drug trials to rebut lack of knowledge claims. For example, in *United States v. Castro,* 972 F.2d 1107, 1111 (9th Cir.1992), an expert testified that millions of dollars worth of cocaine "would have never been entrusted to an unknowing dupe." Here, as in *Castro,* the expert's testimony rebutted the defendant's lack of knowledge claim.

The necessity of this expert testimony was apparent from the very beginning of Webb's trial. Webb's attorney stated in her opening statement:

So what is the focus of this case, and what are we asking you to pay close attention to? Whether or not the government will be able to prove to you beyond a reasonable doubt that Marty Webb knew that the gun that was hidden in this shirt, hidden under the hood of the car, was there, that he knew it was there, and that it was his gun, that he possessed that gun. That's the key question in this case....

[The Government] will not be able to prove to you, ladies and gentlemen, that he knew that that gun was hidden in that car and that he intentionally and knowingly possessed that gun.

The Government therefore properly used the expert's testimony to rebut Webb's lack of knowledge claim.

Significantly, the expert was particularly qualified to give such an opinion. He testified that, in his nineteen years as a police officer, he had training and experience in the way that guns are concealed in cars. While working in the county jail for a period of one year, the officer talked to 50 to 60 inmates *per day* about how and why criminals conceal weapons. Thus, the officer's experience qualified him to render an opinion regarding

one of the most important concerns faced by police officers-where, how, and why criminals conceal their weapons.

In addition, the trial court and the Government took steps to mitigate the testimony's potential prejudicial effect. The Government focused its questions on the practices of "persons" rather than criminals or gang members. Moreover, even if the jury drew the adverse inference that Webb was a criminal, that inference would not prejudice him because the jury already knew that Webb was a criminal: Webb had stipulated that he had been convicted of three prior felonies.

In light of the above, the district court properly determined that the testimony's prejudicial effect did not substantially outweigh its probative value.

### B. Drug–Courier Profile Evidence

■ Webb also argues that the expert testimony was similar to inadmissible drug courier profile testimony. A drug courier profile is:

> a somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics.... These profiles are commonly used by agents as a basis for reasonable suspicion to stop and question a suspect or to form probable cause.

*United States v. Lui*, 941 F.2d 844, 847 (9th Cir.1991) (citations and internal quotations omitted). We have held that drug-courier profile evidence is inherently prejudicial and thus that it is admissible only in two circumstances: 1) "to establish modus operandi, but only in exceptional, complex cases;" or 2) "to rebut specific attempts by the defense to suggest innocence based on the particular characteristics described in the profile." *United States v. Lim*, 984 F.2d 331, 335 (9th Cir.1993) (citation and internal quotation omitted).

More recently, however, we have rejected the argument that modus operandi expert testimony raises concerns similar to those raised by drug-profile testimony. *Gil*, 58 F.3d at 1422. In *Gil*, we rejected the drug profile evidence comparison "because we have consistently held 'that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi.'" *Id.* (quoting *Johnson*, 735 F.2d at 1202) (emphasis added).

Further, in *United States v. Taren–Palma*, 997 F.2d 525, 534–535 (9th Cir.1993), we upheld admission of expert testimony regarding the use of guns in narcotics transactions because the fact that the defendant was carrying a gun was not innocuous. We distinguished *Lim* and *Lui* by noting that in those cases, the inadmissible drug courier profile evidence involved innocuous bits of evidence, such as engaging in domestic travel without carrying drugs. 997 F.2d at 535. Here, like in *Taren–Palma*, the fact that Webb had a gun concealed under the hood of his car was by no means innocuous.

In addition, unlike *Lim* and *Lui*, none of the expert testimony in this case was admitted to demonstrate that Webb was guilty because he fit the characteristics of a certain drug-courier profile. Instead, the expert testimony was properly admitted to assist the jury in understanding the reasons why a person would conceal a weapon in the engine compartment of a car.

### C. Webb's State of Mind

■ Webb next argues that the expert testimony was inadmissible because it constitutes testimony on his state of mind, in violation of Federal Rule of Evidence 704(b). Rule 704(b) prohibits an expert from stating his opinion on the ultimate issue of whether a defendant had the particular mental state at issue.

The expert in this case described a *typical* situation, and never offered any opinion about whether Webb knew the weapon was hidden in his car. The expert testified about a typical way people conceal weapons in cars and the typical reasons for their concealment. In fact, on cross-examination, the expert admitted that he had no information that Webb knew the weapon was in the engine compartment. Under these circumstances, it was left to the jury to determine whether Webb knew the gun was hidden in the car. Thus, the expert did not give an impermissible opinion under Rule 704(b).

*See United States v. Lockett,* 919 F.2d 585, 590 (9th Cir.1990) (allowing expert testimony that "merely described a typical cocaine packaging operation. The jury was left to determine, on its own, whether there was a cocaine distribution operation in the present case, and whether Lockett's presence was an exception to the general practice of cocaine packaging operations.").

Webb relies on *United States v. Boyd,* 55 F.3d 667, 671 (D.C.Cir.1995). In *Boyd,* the D.C. Circuit held that the district court abused its discretion in allowing the prosecutor to ask an expert's opinion as to whether a hypothetical defendant in a hypothetical factual scenario, indistinguishable from the defendant and facts in the case before the court, had the intent necessary for conviction. In the instant case, however, the Government did not ask the police expert about either Webb's intent or knowledge, or a hypothetical defendant's intent or knowledge. Thus, *Boyd* does not support Webb's position.

### D. *Daubert*

■ Finally, Webb argues that the Supreme Court's decision in *Daubert,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, governs the admission of expert testimony regarding the modus operandi of criminals, and that the district court therefore abused its discretion by failing to follow the *Daubert* procedures for admitting such testimony. Because the expert testimony in this case constitutes specialized knowledge of law enforcement, not *scientific* knowledge, the *Daubert* standards for admission simply do not apply. *United States v. Cordoba,* 104 F.3d 225 (9th Cir. 1997), *as amended,* Feb. 11, 1997.

### V. CONCLUSION

The expert testimony in this case was proper modus operandi testimony. Because the district court did not abuse its discretion in admitting the testimony, we affirm Webb's conviction.

**AFFIRMED.**

JENKINS, District Judge, concurring in the result.

I join in affirming the district court's judgment.

I write separately to emphasize the importance of process.

### Rule 702 and *Daubert*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony in civil and criminal trials:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court read Rule 702 to say that "the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592, 113 S.Ct. at 2796 (footnotes omitted). *Daubert* requires that the trial judge determine whether proffered scientific expert testimony genuinely qualifies as reliable scientific *knowledge.* In assessing "knowledge" and its reliability, *Daubert* demands a searching inquiry as to method. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1318 (9th Cir.) (on remand) (*"Daubert II"*), *cert. denied,* —— U.S. ——, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995). Indeed, the Rule 702 inquiry into knowledge should "focus ... solely on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 595, 113 S.Ct. at 2797.

A proponent of scientific evidence may satisfy its burden of establishing that the evidence is scientifically valid by, *inter alia,* showing that the evidence grew out of pre-litigation research, showing that the research upon which the evidence is based has been subjected to normal scientific scrutiny through peer review and publication, or explaining precisely how the conclusions were reached and pointing to

some objective source to show that the conclusions are based on "scientific method, as it is practiced by (at least) a recognized minority of scientists in the[ ] field." *Daubert II,* 43 F.3d at 1318–19.

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1141 (9th Cir.1997). Reliability of method may also be indicated by whether a method can be and has been tested, its known or potential rate of error, and its degree of acceptance within a relevant scientific community. *Daubert,* 509 U.S. at 593, 594, 113 S.Ct. at 2796, 2797.

If the proffered testimony indeed embodies knowledge, the trial court must determine whether that knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue," i.e., whether it is helpful. Fed.R.Evid. 702. "This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.' " *Daubert,* 509 U.S. at 591, 113 S.Ct. at 2795 (quoting 3 Jack Weinstein & Margaret Berger, *Weinstein's Evidence: United States Rules* ¶ 702[02], at 702–18 (1988)). The question of helpfulness has been characterized as one of "fit." " 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily validity for other, unrelated purposes." *Id.* Rather than asking "what do you know?", the latter inquiry asks "how does it help?"

Rule 702 recognizes that a witness may be an expert, and that a witness may have an opinion, but that it may not be an expert opinion, and may not be helpful to the trier of fact.

Webb asserts that *Daubert* governs the admissibility of expert testimony regarding the *modus operandi* of criminals. The majority rejects Webb's assertion because "the *Daubert* standards for admission simply do not apply" to "specialized knowledge of law enforcement, not *scientific* knowledge." [1]

Yet Rule 702 applies to *all* expert testimony and requires the trial court to determine at the outset, pursuant to Rule 104(a), whether the witness is proposing to testify to "scientific, technical, or other specialized knowledge" and whether the witness is qualified as an expert by "knowledge, skill, experience, training, or education." Then, as gatekeeper, the trial court "must ensure that the proposed expert testimony is relevant to the task at hand," *Daubert II,* 43 F.3d at 1315.

This "gatekeeper" function finds description in *Daubert,* but it finds its source in Rule 702. Rule 702 makes the trial judge no less the gatekeeper when counsel characterizes proffered expert testimony as "technical" or "specialized," rather than "scientific."

In saying that "the *Daubert* standards for admission simply do not apply" to "specialized knowledge of law enforcement," we cannot be suggesting that the district court examine less rigorously the specialized knowledge underlying proffered *nonscientific* testimony, or that the district court may abdicate its role as gatekeeper where the subject matter does not depend upon the scientific method. The trial court's role as gatekeeper concerning nonscientific "specialized knowledge" proves equally crucial to the integrity of the trial process, particularly where, as here, the proffered testimony's potential for prejudice to the defendant runs so high.

### *Daubert* and "Specialized Knowledge"

*Daubert* suggests that the term "knowledge" itself "connotes more than subjective belief and unsupported speculation. The term 'applies to any body of known facts or to any body of ideas inferred from such facts

---

**1.** The majority cites to *United States v. Cordoba,* 104 F.3d 225, 230 (9th Cir.1997), which similarly rejected the view that *Daubert* governs the admission of expert testimony regarding the modus operandi of narcotics traffickers, reasoning that *"Daubert* applies only to the admission of scientific testimony.... In order to qualify as scientific knowledge, an inference or assertion must be derived from the scientific method. The government expert testified on the basis of specialized knowledge, not scientific knowledge."

It appears that this court has spoken on this subject with more than one voice. *See Southland Sod Farms,* 108 F.3d at 1143 n. 8 (9th Cir.1997) (*"Daubert'*s holding applies to all expert testimony, not just testimony based on novel scientific methods"); *Claar v. Burlington Northern R. Co.,* 29 F.3d 499, 501 n. 2 (9th Cir.1994) (*Daubert'*s requirements "apply to all proffered expert testimony-not just testimony based on novel scientific methods or evidence").

or accepted as truths on good grounds.'" 509 U.S. at 590, 113 S.Ct. at 2795 (quoting *Webster's Third New International Dictionary* 1251 (1986)). In evaluating the admissibility of testimony as to technical or other specialized knowledge, the trial court in each instance must examine whether what is proffered as knowledge truly deserves the label, and must ask "does this particular expert have sufficient specialized knowledge to assist the jurors in this case?" 3 Jack Weinstein & Margaret Berger, *Weinstein's Evidence: United States Rules* ¶ 702[01], at 702–9 (1995).

*Daubert* offers some general observations concerning the factors bearing upon the inquiry whether the reasoning or methodology underlying proffered testimony as to "scientific knowledge" is scientifically valid, i.e., that it is "derived by the scientific method." 509 U.S. at 590, 113 S.Ct. at 2795. *See id.* at 593–94, 113 S.Ct. at 2796–97.[2] Similar factors pertaining to the validity of "technical or other specialized knowledge" have not yet found a comparable catalogue in the reported cases.[3] Nevertheless, "the trial judge cannot ... make a determination as to admissibility without investigating the competence the particular proffered expert would bring to bear on the issues. Only then will the judge be able to decide whether the test of Rule 702–assistance to the trier of fact-has been satisfied." 3 Weinstein & Berger ¶ 702[04], at 702–60. Looking beyond the general qualifications of a witness, the recurring question "Does a person generally qualified in a field have sufficient specific knowledge to deal with the particular issues in the case at hand?" must be resolved in the first instance by the trial judge. *Id.* at 702–61 to 702–62, 702–75. *Cf. Minasian v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th

Cir.1997) (proffered banking expert "did not gather any data on the subject, survey the published literature, or do any of the other things that a genuine expert does before forming an opinion").

## Specialized Knowledge: "What does he know?"

In this instance, Detective Navarro's expert testimony ostensibly involved "specialized knowledge of law enforcement," or more precisely, specialized knowledge of human behavior patterns characteristic of the ongoing illicit concealment of firearms-"where, how, and why criminals conceal their weapons."[4] Detective Navarro testified to his training and experience "in the way that guns are sometimes concealed in cars," including approximately a year of interviews with inmates of the Los Angeles County Jail, some of whom discussed concealing weapons in the engine compartment of cars and the reasons for doing so.

## Assisting the trier of fact: "How does it help?"

Judge Trott writes that Detective Navarro's testimony "explained evidence about the gun's whereabouts that easily could have been beyond the knowledge of a normal juror." But what was it about the evidence that a gun was concealed in the engine compartment of Webb's car that the expert helped the jury to understand? This was not a case in which the expert explained the criminal purpose of seemingly innocuous acts. Indeed, the majority concedes that the fact that a gun was concealed under the hood of Webb's car "was by no means innocuous," but says the testimony nevertheless was properly admitted "to assist the jury in understanding the reasons why a person would conceal a weapon in the engine compartment

---

**2.** Perhaps it is these specific factors involving the *scientific method* which are "the *Daubert* standards of admission" which the majority in this case says "simply do not apply."

**3.** One commentary suggests that "courts must address the question of what threshold of reliability will be required of evidence which is determined to be 'technical, or other specialized knowledge' to which *Daubert* does not apply." 2 Michael H. Graham, *Handbook of Federal Evidence* § 702.5, at 98 (4th ed.1996).

**4.** Are we so certain that knowledge of patterns of human behavior does not represent *scientific* knowledge, at least to some degree? Accurate description of patterns of human behavior requires empirical observation, perhaps even the formulation and testing of hypotheses concerning predictable relationships between different observed facts. Indeed, "there is no obvious clear demarcation between scientific knowledge and technical and other specialized knowledge." 2 Graham, § 702.5, at 81.

of a car," such as "to avoid arrest or prosecution." Yet "why" the gun was concealed was not an element of the charged offense, and not "a fact in issue" for purposes of Rule 702.

How, then, *does* it help?

The majority asserts that the Government used the expert's testimony "to rebut Webb's lack of knowledge claim,"[5] yet notes that Detective Navarro never offered any opinion about whether Webb knew the weapon was hidden in his car. Rather, the witness "described a *typical* situation," and "a typical way people conceal weapons in cars and the typical reasons for their concealment." If, as the majority acknowledges, the expert admitted that he had "no information that Webb knew the weapon was in the engine compartment," how could he assist the jury in determining whether Webb *did* know?

Detective Navarro's testimony implicitly suggested that Webb knew-the inference of knowledge being drawn from the fact of concealment because knowing concealment was *typical* of the other criminals with whom Detective Navarro was acquainted. If expert testimony that "people" conceal firearms in the engine compartment of their cars to avoid arrest and prosecution was "probative of Webb's knowledge of the gun's presence,"

then Webb's guilty knowledge flowed by inference from the guilty knowledge of nameless others. Only in this fashion could the expert "rebut Webb's lack of knowledge claim" while testifying to no specific knowledge or opinion as to whether Webb himself knew about the gun.

Webb's objection that he was improperly "profiled" by the Government's expert does not stray too far off the mark.[6] *Cf. United States v. Gillespie*, 852 F.2d 475, 479–80 (9th Cir.1988) (district court abused discretion in admitting expert testimony by clinical psychologist describing the common characteristics of child molesters).

This court has long been critical of the use of profile evidence-proof of what is "typical"-as substantive evidence of guilt, insisting that "'... [e]very defendant has a right to be tried based on the evidence against him or her....'" *United States v. Beltran–Rios*, 878 F.2d 1208, 1210 (9th Cir.1989) (quoting *United States v. Hernandez–Cuartas*, 717 F.2d 552, 555 (11th Cir.1983)). In rejecting Webb's "profile" objection, the majority characterizes the expert testimony in this case as going to *modus operandi*[7] rather than a profile.

---

**5.** Defendant Webb did not testify at trial. In opening statement, Webb's counsel asserted that the government "will not be able to prove to you, ladies and gentlemen, that he [Webb] knew that that gun was hidden in that car and that he intentionally and knowingly possessed that gun," *i.e.*, that the government would fail to meet its burden of proof as to an essential element of the charged offense. Hardly an affirmative claim, Webb offered no *evidence* concerning his knowledge-or lack thereof-to which the government properly could offer expert testimony in rebuttal. *See* 1 Graham, § 611.3, at 819 ("The proper scope and function of rebuttal is thus refutation, which involves evidence which denies, explains, qualifies, disproves, repels, or otherwise sheds light on *evidence offered by the defense* including evidence rehabilitating the credibility of witnesses." (emphasis added & footnote omitted)).

**6.** In *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam), the Supreme Court described a "drug courier profile" as "a somewhat informal compilation of characteristics believed to be *typical* of persons unlawfully carrying narcotics." *Id.* at 440, 100 S.Ct. at 2753 (emphasis added). "This court has repeatedly noted that the government may not use such profiles as evidence of substantive

guilt." *United States v. Baron*, 94 F.3d 1312, 1320 (9th Cir.1996); *see, e.g., United States v. Ogbuehi*, 18 F.3d 807, 812 (9th Cir.1994); *United States v. Lim*, 984 F.2d 331, 334–35 (9th Cir.), *cert. denied*, 508 U.S. 965, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993); *United States v. Lui*, 941 F.2d 844, 847 (9th Cir.1991). "The admission of drug courier profile evidence is inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity." *Lim*, 984 F.2d at 334–35 (citing *Lui*, 941 F.2d at 848).

**7.** *Modus operandi*-the "phrase of which authors of detective fiction are fond"-often refers to evidence of other criminal acts committed by the defendant "so nearly identical in method as to earmark them as the handiwork of the accused." 1 *McCormick on Evidence* § 190, at 801 & n. 19 (John W. Strong ed., 4th ed.1992) (footnote omitted). "Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature." *Id.* at 801–03 (footnotes omitted).

## Rule 702 and Modus Operandi Evidence

In prior cases this court has addressed two types of modus operandi evidence: (1) evidence of an individual modus operandi, or "signature" evidence; [8] and (2) evidence of a common modus operandi, shown by testimony as to "the general practices of criminals," which ostensibly "helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir.1984). This court has approved of the use of expert testimony concerning a common modus operandi on a number of occasions. *See United States v. Gil*, 58 F.3d 1414 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 430, 133 L.Ed.2d 345 (1995).[9] The ostensible purpose of this kind of testimony is to "alert the jury to the possibility that combinations of seem-

ingly innocuous events may indicate criminal behavior." *United States v. Lui*, 941 F.2d 844, 848 (9th Cir.1991).[10] "Expert testimony on the structure of criminal enterprises is allowed to help the jury understand the scheme and assess a defendant's involvement in it." *United States v. Patterson*, 819 F.2d 1495, 1507 (9th Cir.1987) (expert testimony "helped the jury understand the complex heroin distribution scheme").[11] Moreover, "In a series of cases, we have upheld admission of a law enforcement officer's expert testimony that the defendant's activities indicated that he acted in accordance with usual criminal modus operandi." *United States v. Espinosa*, 827 F.2d 604, 612 (9th Cir.1987) (upholding introduction of expert testimony regarding use of apartment as a "stash pad"), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988).

While "modus operandi" evidence may be admitted to help the jury understand com-

---

8. In *United States v. Momeni*, 991 F.2d 493, 494 (9th Cir.1993), a prosecution for mail, wire and credit card fraud at hotels in Hawaii, the government presented "signature" evidence suggesting that each of the hotel stays involved the same individual, (*e.g.*, the perpetrator gave the same fictitious address and/or fictitious telephone number; tips on credit card vouchers were in such amounts that the totals rounded off to even dollar amounts, the perpetrator departed prior to the scheduled end of his stay without checking out). "Evidence of this kind may be sufficient alone to establish a perpetrator's identity. *See United States v. Milhollan*, 599 F.2d 518, 524–25 (3d Cir.1979) (finding similar modus operandi evidence probative of identity); 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 404[16] (1992) (discussing "signature" evidence in context of Fed.R.Evid. 404(b))." *See also Featherstone v. Estelle*, 948 F.2d 1497 (9th Cir.1991) (holding that admission of testimony which denominated appellant's modus operandi in previously uncharged and charged crimes was not clearly erroneous).

   Evidence of individual modus operandi may be admissible under Fed.R.Evid. 404(b), *inter alia*, to show absence of mistake or accident, or to show knowledge or intent. *See United States v. Hinton*, 31 F.3d 817, 822–23 (9th Cir.1994); *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1325–27 (9th Cir.1992) (evidence of prior similar conduct was relevant as tending to show that defendant was aware or at least in reckless disregard of fact that truck that he subsequently drove contained illegal aliens in strikingly similar modus operandi).

9. *See also United States v. Kearns*, 61 F.3d 1422 (9th Cir.1995); *United States v. Gomez-Osorio*, 957 F.2d 636, 641–42 (9th Cir.1992) (admitting

expert testimony that defendant's use of pagers indicated he was a money launderer); *United States v. Jaramillo–Suarez*, 950 F.2d 1378, 1384 (9th Cir.1991) (expert testimony that pagers used frequently in drug trafficking was relevant evidence); *United States v. Stewart*, 770 F.2d 825, 831 (9th Cir.1985), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986) (counter surveillance driving); *United States v. Rogers*, 769 F.2d 1418, 1425 (9th Cir.1985) ("[l]aw enforcement officers may testify concerning the techniques and methods used by criminals.").

10. *See also United States v. Alonso*, 48 F.3d 1536, 1541 (9th Cir.1995) (reviewing cases and concluding that "[t]hese cases show that a district court may properly allow expert testimony from a law enforcement officer that will help the jury understand how otherwise innocent conduct ... might in fact be consistent with or even indicative of criminal conduct").

11. *See also United States v. Taren–Palma*, 997 F.2d 525, 534–35 (9th Cir.1993), *cert. denied*, 511 U.S. 1071, 114 S.Ct. 1648, 128 L.Ed.2d 368 (1994); *United States v. Lockett*, 919 F.2d 585, 590–91 (9th Cir.1990) (role of participants in drug trafficking organization); *United States v. Mares*, 940 F.2d 455 (9th Cir.1991); *United States v. Bosch*, 914 F.2d 1239, 1242–43 (9th Cir.1990) (role of defendant in aiding and abetting narcotics distribution); *United States v. Andersson*, 813 F.2d 1450 (9th Cir.1987); *United States v. Fleishman*, 684 F.2d 1329 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982).

plex criminal activities, this court has also recognized the need for caution. *United States v. Gutierrez*, 995 F.2d 169 (9th Cir. 1993), another gun possession case, acknowledged the admissibility of common modus operandi evidence in affirming the admissibility of a police officer's expert opinion that a defendant's observed actions were "furtive," but warned:

> Nonetheless, a trial court should not routinely admit this type of opinion testimony without carefully weighing the testimony's probative value against its possible prejudicial effect.... "This weighing is particularly important with the expert testimony of a law enforcement officer, which often carries an aura of special reliability and trustworthiness." *Id.* at 613 (internal quotations omitted).

*Id.* at 172 (quoting *United States v. Espinosa*, 827 F.2d at 613).[12] Likewise, a trial court should not routinely admit this type of expert testimony without making the threshold determinations concerning specialized knowledge and helpfulness required by Rule 702.[13] *See also* Peter Schofield, Note, *Criteria for Admissibility of Expert Opinion Testimony on Criminal Modus Operandi*, 1978 Utah L.Rev. 547.

The prior cases in this circuit discussing common modus operandi testimony often discuss helpfulness in connection with the complexity of the criminal activities at issue. *See, e.g., Cordoba*, 104 F.3d at 230 ("the testimony was properly admitted to assist the jury in understanding modus operandi in a complex criminal case"); *Lim*, 984 F.2d at 335; *Lui*, 941 F.2d at 847–48; *Johnson*, 735 F.2d at 1202 ("Such evidence helps the jury to understand complex criminal activities...."). The more complex the pattern of criminal behavior at issue, the more assistance it would seem an expert could offer in explaining the significance of particular elements of the pattern.

The problem here is that concealing a firearm in a vehicle does not appear to present a "complex criminal case."

Far from being innocuous, a gun in an engine compartment seems entirely out of place. Common sense urges the inference that a person who conceals a gun in an engine compartment *knows* that the gun is there. While reinforcing that simple inference, expert testimony that other persons who concealed guns in engine compartments did so knowingly offers little else that will assist the trier of fact. *Why* a gun may be concealed in a vehicle's engine compartment, *e.g.*, to avoid detection, seems almost as apparent.

*United States v. Booth*, 669 F.2d 1231 (9th Cir.1981), affirmed the trial court's exclusion of expert testimony concerning the absence of fingerprints in a bank robbery get-away vehicle because of the government's failure to make a preliminary showing (1) that the witness had expert knowledge of the reason no fingerprints were found on the vehicle and (2) that the testimony would be helpful: "The court found this testimony was irrelevant because, in the absence of any showing by the government that this was Booth's modus operandi, it did not tie Booth to the robbery." *Id.* at 1240. Moreover, "[t]he trier of fact is capable of inferring why no fingerprints were

---

**12.** In contrast to the majority, I am not so certain that this circuit has rejected the argument that modus operandi expert testimony raises concerns similar to those raised by drug-profile testimony.

**13.** The district court retains its role as gatekeeper even if a law enforcement officer's testimony is to be received as lay opinion testimony under Fed.R.Evid. 701. In *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir.1995), this court held that a law enforcement officer's testimony concerning the nexus between drug trafficking and weapons possession

> was rationally based on his perceptions during the search at VonWillie's residence and his

perceptions during prior drug investigations. *See* Fed.R.Evid. 701(a). His testimony also was helpful to the jury's "determination of a fact in issue," *see* Fed.R.Evid. 701(b), namely whether VonWillie was involved in drug trafficking and whether he used a firearm "in relation to" a drug offense. *See* [*United States v.*] *Simas*, 937 F.2d [459] at 464–65 [ (9th Cir. 1991) ] (the opinion of a law enforcement officer, who testified as a lay witness," that the defendant's activities match 'the usual criminal modus operandi,'" is helpful to the jury and permissible under Rule 701(b)) (citation omitted)."

found without the assistance of expert testimony." *Id.*

While this is not to say that expert testimony must be excluded in cases where the subject-matter falls within the comprehension of the average juror,[14] Rule 702's helpfulness requirement indicates that the proffered testimony must offer *something* not otherwise present that would be helpful to the trier of fact. *Cf. United States v. Castillo,* 924 F.2d 1227, 1232–33 (2d Cir.1991).

> Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute. Ladd, *Expert Testimony,* 5 Vand.L.Rev. 414, 418 (1952). When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time.

Fed.R.Evid. 702 advisory committee's note.

Judge Trott seems to suggest that expert testimony from law enforcement officers concerning a common criminal modus operandi should be deemed admissible almost as a matter of routine, even in relatively simple cases.[15] I am convinced that Rule 702 as amplified in *Daubert* requires trial courts as gatekeepers to engage in a more thoughtful, more deliberate process, testing specialized knowledge and helpfulness anew in each case.

In this case, the district court considered the admissibility of the proffered expert testimony in the context of a pretrial motion in limine, and as a preliminary matter allowed the testimony as helpful to show possession, noting that "[t]he government does have the

**14.** *See* 3 Weinstein & Berger ¶ 702[02], at 702–20 through 702–21.

**15.** Judge Trott's assertion that "we even allow modus operandi expert testimony in cases that are not 'complex'" finds little direct support in *United States v. Gil,* or in the other cases cited. *Gil* affirmed the admissibility of expert testimony

burden of proving that the defendant knew the gun was there." Though the district court's ruling remains somewhat unclear on the precise issue of helpfulness, I am not persuaded the district court's ruling in this instance was "manifestly erroneous." *Espinosa,* 827 F.2d at 611. I therefore vote to affirm.

FLETCHER, Circuit Judge, concurring.

In addition to concurring in the majority opinion, I concur in Judge Jenkins' thoughtful and insightful concurrence highlighting the need for district courts to perform adequately the "gate-keeper" function in determining whether "expert testimony" is truly "expert" and likely to be of help to the jury.

I note that our decision here that *Daubert* informs the district court's appropriate inquiry into the admissibility of scientific evidence does not suggest that the imperatives of Rule 702 and Rule 104(a) do not apply to technical or other specialized knowledge.

concerning modus operandi of drug trafficking as "precisely the type [of conduct] for which modus operandi evidence is often used," *rejecting* the defendants' argument in *Gil* that "the activities described are not complex ones requiring expert explanation." 58 F.3d at 1422.